Eddie Paradis

*vs.*

Lewiston, Augusta & Waterville Street Railway.

Androscoggin.    Opinion March 1, 1915.

*Contract.    Due Care.    Exceptions.    Fellow Servant.    Negligence.    Notice to
Produce.    Written Agreement between the Defendant and the Tarbox
Express Company.*

Action of tort brought by the plaintiff, a motorman in the employ of the defend-
ant, to recover damages for injuries sustained by him on February 2, 1912, in a
collision between the car he was driving and two freight cars partly loaded with
wood which had been left standing unflagged and unattended on the main line
of the defendant's road between Gardiner and Lewiston, at or near Thompson's
Crossing, so called.

*Held:*

1. The case clearly shows that the plaintiff failed to prove that the agreement
offered and excluded was the agreement in force between the companies at the
time of the accident, and for that reason it was properly excluded.

2. The purpose of a notice to produce a document is to obtain the document itself that it may be introduced in evidence if admissible, or to lay the foundation for the introduction of secondary evidence of its contents, if not produced. But it does not have the effect to make an inadmissible document admissible.

3. The evidence shows unmistakably, that the motorman of the express car was the servant of the defendant, and therefore the fellow servant of the plaintiff; that he had full control of the operation of the express car; and that the freight cars were left standing on the main line through his negligence.

4. Where the plaintiff's injuries were caused by the negligence of his fellow servant, he cannot recover of the defendant damages therefor.

5. Furthermore, the evidence clearly shows that the plaintiff did not exercise that degree of attention and caution on his part which the law requires, otherwise he would have seasonably seen the obstruction on the track and avoided the collision.

On exceptions by plaintiff. Exceptions overruled.

This is an action of tort to recover for personal injuries received by plaintiff through the negligence of the defendant, February 2, 1912, in a collision on the main line of defendant's railway between Gardiner and Lewiston, between a passenger car on which the plaintiff was motorman, and two freight cars.

Plea, general issue. In the course of the trial, the plaintiff offered a written agreement between the defendant and the Tarbox Express Company, and the presiding Justice excluded the same, to which the plaintiff excepted. At the close of the evidence of the plaintiff, the presiding Justice directed a nonsuit, to which the plaintiff excepted.

The case is stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

KING, J. Action of tort brought by the plaintiff, a motorman in the employ of the defendant, to recover damages for injuries sustained by him on February 2, 1912 in a collision between the car he was driving and two freight cars partly loaded with wood which had been left standing on the main line of the defendant's road between Gardiner and Lewiston at or near Thompson's Crossing, so called.

The case is before this court on exceptions: First, to the exclusion of a certain written agreement dated Nov. 1, 1907 between the defend-

ant and the Tarbox Express Company; and second, to the granting of a nonsuit.    We think neither of the exceptions is sustainable.

1.    At the time of the accident the Hoyt-Tarbox Express Company was operating an express business over the defendant's railway system under an arrangement between it and the defendant company.    As a part of that business it transported wood from points along the line of the railway.    On the morning of the accident an express car, in taking a car load of wood from the spur track at Thompson's Crossing, had left the two freight cars out on the main line unattended and unflagged.    In his writ the plaintiff alleged "that the defendant carelessly and negligently left" the cars on the main line.    At the trial, however, he sought to prove that the express company had control of the operation of the express car and that it was through its negligence that the freight cars were left standing on the main line.    And the instrument excluded was offered for the purpose of showing the terms of the agreement between the defendant and the Express Company under which the latter was carrying on the express business at the time of the accident.    The agreement offered, however, expressly provided that it should "be in force for one year from November first, 1907," but it contained an option for renewal to be taken advantage of by the Express Company by a thirty days notice in writing before the expiration of the agreement. In order, therefore, to show that the agreement was admissible it was incumbent upon the plaintiff to prove that it was the contract in force between the two companies at the time of the accident.    But the case clearly shows that the plaintiff failed to prove that, and for that reason the agreement was not admissible.

Nor was the instrument excluded admissible merely because produced in compliance with the plaintiff's notice therefor.    The purpose of a notice to produce a document is to obtain the document itself that it may be introduced in evidence if admissible, or to lay the foundation for the introduction of secondary evidence of its contents, if not produced.    But it does not have the effect to make an inadmissible document admissible.

2.    The nonsuit.    It appears from the evidence that the substance of the arrangement between the defendant and the Express Company for the carrying on of the express business was, that the defendant was to haul the express matter over its road, and to furnish for that purpose at its expense the necessary cars, a motorman to operate each

car, power to propel the same, and the right of way over its road; the Express Company on its part was to superintend and manage the details of the express business, and to furnish at its expense all necessary labor for the proper collection and distribution of express matter, including an express messenger for each express car, and to collect the gross receipts of the business, which were to be divided between the two companies on an agreed percentage basis.

The motorman of the express car was employed by, paid by, and under the control of, the defendant. He was its servant. He had full control of the operation of the express car, the running of it, the placing of it, and the handling and placing of freight cars on which express was carried. The evidence shows, therefore, beyond doubt that the motorman of the express car and the plaintiff were servants of the same master, the defendant. It follows then, according to well settled principles, that if the plaintiff's injuries were caused by the negligence of the motorman of the express car in leaving the freight cars on the main line the plaintiff cannot recover of the defendant, because that negligence was the negligence of a fellow servant.

But if there had been evidence of negligence on the part of the defendant, the plaintiff failed to prove that he was in the exercise of due care. The place where the accident happened was in a hollow. Going east from that point the grade of the main line is ascending for a distance of about 2000 feet. The spur was on the north side of the main track with its dead end toward the east. Its rails were lower than the main line. There was a pile of wood on the north side of the spur, between it and the highway. The freight cars had been left on the main track just east of the switch. The plaintiff was driving his car down the grade from the east toward the switch. There were no trees or bushes or buildings to obstruct his view of the track, and the morning was clear. The brakes of his car were in order and the rails were not wet. He says that he did not see the freight cars until he was within 200 feet of them, too near to avoid a collision, and his excuse for not seeing them before is the existence of the pile of wood. The evidence is overwhelming, however, that he could have seen the cars from a point much farther up the track if he had been attentive. One of his witnesses testified that the freight cars were in plain sight for a distance of at least 1500 feet up the track. The plaintiff admits that he was driving his car at 24 miles an

hour, although he knew the rule of the road required that a car should not be driven over a switch at a greater speed than four miles an hour.

As was said by this court when this case was before it the first time, had ''the plaintiff exercised that degree of attention, watchfulness, and caution which the law requires, he could not have escaped seasonably seeing, and therefore avoiding, the obstruction.''

*Exceptions overruled.*