THE STATE OF NEW JERSEY, APPELLANT, v. VICTOR
LABATO, DEFENDANT-RESPONDENT.

Argued February 19, 1951—Reargued April 2, 1951—
Decided May 14, 1951.

138

140

*Mr. Robert Burk Johnson,* Assistant County Prosecutor, argued the cause for the State. *Mr. Mitchell H. Cohen,* County Prosecutor, on the brief.

*Mr. Joseph Tomaselli* argued the cause for respondent (*Messrs. Malandra & Tomaselli,* attorneys).

The opinion of the court was delivered by

HEHER, J. The question here is the sufficiency of the plea of double jeopardy interposed by defendant Labato to an indictment returned in the Camden County Court on February 16, 1950, charging that on a given day he "unlawfully and knowingly did have in his possession certain paper, slips, documents and memorandum pertaining to the business of lottery policy, so-called and otherwise called under the name and style of numbers," in contravention of *R. S.* 2 :147–3. The plea proceeds from the conviction of the accused in the Police Court of the City of Camden on February 2, 1950, on a complaint alleging that he "did unlawfully have in his possession" the self-same "number slips," in violation of *R. S.* 2 :202–16, providing that the possessor of lottery slips or memoranda pertaining "to the business of a number game," as therein defined, shall be adjudged a "disorderly person." To this complaint, the accused "entered a plea of *non vult*" and "received a sentence of $200 or 30 days in jail," so runs the agreed statement in lieu of the record.

The agreed statement embodies a concession by the State that "the proof necessary to convict on the indictment would necessarily also convict on the disorderly charge," and "the proof necessary to convict on the disorderly charge would support a conviction on the indictment," and an acknowledgment by the accused that "his prosecution as a disorderly person" in the police court "was over the objection of the County Prosecutor, who had demanded" that the accused "be prosecuted under the Crimes Act." The plea of *autrefois convict* was sustained by the county court. The State's appeal from the consequent judgment was certified here for decision on our own motion.

It is now contended by the State that the accused's conviction as a disorderly person is not a conviction of crime and the principle of former jeopardy has no application, particularly because the police court did not have jurisdiction of the criminal offense laid in the indictment and the county court did not have jurisdiction of the offense made punishable by

the Disorderly Persons Act; and that the objection of the county prosecutor to the prosecution of the accused as a disorderly person served to deprive the police court of jurisdiction of that proceeding.

## I.

The Constitution of 1947 provides that no person shall, after acquittal, be tried for the same offense. *Article I, paragraph* 11. This provision, in itself, goes no further than to forbid the retrial of a person who has been acquitted of an offense. *Smith and Bennett v. State*, 41 *N. J. L.* 598 (*E. & A.* 1879). But the enumeration of "rights and privileges" in this article of the Constitution "shall not be construed to impair or deny others retained by the people." *Article I, paragraph* 21. And among the "natural and unalienable rights" secured by the first paragraph of Article I "are those of enjoying and defending life and liberty." The Constitution of 1844 had the same provisions. *Article I, paragraphs* 1, 10, 21.

It is an ancient principle of the common law that one may not be twice put in jeopardy for the same offense. This is one of the limitations upon arbitrary power confirmed by King John's Magna Charta of 1215, in the provision (*c.* 29) ensuring the essentials of individual right and justice and the ancient liberties of the freeman against interference "but by lawful judgment of his peers, or by the law of the land." Immunity from repeated jeopardy was one of the cherished basic liberties of the early common law comprehended in this guaranty of the Great Charter. *State v. Di Giosia*, 3 *N. J.* 413 (1950). The constitutional and common-law protection is not only against the peril of a second punishment, but also against a second prosecution and trial for the same offense. *Levin v. United States*, 5 *Fed.* (*2d*) 598 (1925), *certiorari* denied, 269 *U. S.* 562, 46 *S. Ct.* 21, 70 *L. Ed.* 412 (1925); *Donato v. United States*, 48 *Fed.* (*2d*) 142 (1931). Chitty said that the plea of *autrefois acquit* rests on the principle that "no man shall be placed in peril of legal

penalties more than once upon the same accusation. * * * It is not, in all cases, necessary that the two charges should be precisely the same in point of degree, for it is sufficient if an acquittal of the one will show that the defendant could not have been guilty of the other." And the plea of *autrefois convict* depends on the principle that "no man shall be more than once in peril for the same offense." 1 *Chitty Cr. L.* 452, 455, 462. The rule of former jeopardy has reference to criminal prosecutions only; but the pleas of former conviction and acquittal involve also the doctrine of *res judicata*, for the prior judgment, in its own nature, is conclusive of the subject matter, leaving nothing for subsequent adjudication, and is, in itself, a bar to a second prosecution. *Smith and Bennett v. State, supra.* In civil cases at common law the principle is expressed by the maxim that no one shall be twice vexed for one and the same cause. In this class of cases the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action. *Ex parte Lange,* 18 *Wall.* 863, 21 *L. Ed.* 872 (1873). The doctrine has its roots in natural justice, to shield the freeman from the oppressions and persecutions of arbitrary government. *State v. Di Giosia, supra.* Thus, constitutional guaranties against double jeopardy are merely declaratory of the common law. *Kepner v. United States,* 195 *U. S.* 100, 24 *S. Ct.* 707, 49 *L. Ed.* 114 (1904); *Commonwealth v. Roby,* 12 *Pick.* 496 (1832); *Commonwealth v. Ramunno,* 219 *Pa.* 204, 68 *A.* 184 (1907); *Ex parte Bornee,* 76 *W. Va.* 360, 85 *S. E.* 529 (1915); *State v. Healey,* 136 *Minn.* 264, 161 *N. W.* 590 (1917).

██ There is general agreement as to the essential quality of the principle itself, but endless conflict of decision on the question of identity of offenses. The true test of former jeopardy would seem to be whether the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first. *State v. Di Giosia, supra.* The rule deducible from the cases at common law is that, "unless the first indictment were such as the prisoner might

have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second." 2 *East's P. C.* 522. The doctrine was applied in *Rex v. Taylor*, 3 *Barn & Cressw.* 502; *Rex v. Vandercomb*, 2 *Leach* 708 (1796). See, also, *Arch. Cr. Pl.* 87, *et seq.*; 4 *Coke* 45, 46; 2 *Hale* 246. It has had general acceptance in this country. *Commonwealth v. Roby, supra; Burns and Carey v. People*, 1 *Parker C. R.* (*N. Y.* 182) (1848); *Wharton's Criminal Law* (12th ed.) *section* 396. This must be so, on reason and principle, for the rule of *res judicata* precludes relitigation of the same factual issue. And the common-law maxim of former jeopardy serves the principle of essential justice that no one shall be twice convicted of the same offense, nor subjected to a second prosecution after acquittal of an offense. *State v. Cooper*, 13 *N. J. L.* 361 (*Sup. Ct.* 1833). The test, says Bishop, "is, whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction; when there could, the second cannot be maintained; when there could not, it can be." *Bishop on Criminal Law* (9th ed.), *section* 1052.

Where "the fact prosecuted" is the same in both prosecutions, though the offenses differ "in coloring and degree," there is prior jeopardy. *State v. Cooper, supra; 4 Blackstone's Com.* 336. The principle of the *Cooper* case was reiterated by the old Court of Errors and Appeals in *State v. Rosa*, 72 *N. J. L.* 462 (*E. & A.* 1905), and again in *State v. Mowser*, 92 *N. J. L.* 474 (*E. & A.* 1919). In the latter case a judgment on a plea of guilty to an indictment for robbery was held a bar to the prosecution of an indictment for murder done in the perpetration of the robbery. "The same act may not be twice punished by the same sovereignty, merely because it violates two laws." *Copperthwaite v. United States*, 37 *Fed.* (2d) 846 (1930). It is not necessarily a second jeopardy for the same act that brings the maxim into operation, but rather a second jeopardy for the same offense. *State v. O'Brien*, 106 *Vt.* 97, 170 *A.* 98 (1934). A prosecution "for any part of a single crime bars any further prosecution based

on the whole or a part of that crime." *State v. Shannon,* 113 *Me.* 127, 3 *A.* 2d 899, 120 *A. L. R.* 1166 (1939). There is in such circumstances the identity of offenses which satisfies the rule. It is the evidence, not the theory of the pleader, that determines the issue. *Ex parte Lange, supra.* Said Justice Drake in *State v. Cooper, supra*: "If in civil cases, the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the crown shall not oppress the subject, or the government the citizen, by unnecessary prosecutions." In short, the question is whether the offenses charged are essentially severable and hence distinct, and one is not included in the other. Is the one a constituent part of the other? If, continued Justice Drake in that case, "the whole offense in the eye of reason and philosophy is one, we ought not to presume that the legislature meant to punish it as two. And indeed the power of the Legislature to subdivide offenses must be restrained by the constitutional provision which I have noticed; otherwise that provision may be evaded at pleasure."

An acquittal on a charge of murder is a bar to a subsequent indictment for manslaughter. 2 *Hale* 246. An acquittal upon an indictment for manslaughter is a bar to an indictment for murder on the same facts. *Holcroft's Case,* 2 *Hale* 246; 3 *Co. Rep.* 46 *b.* As a general rule, whether a person accused of a minor offense is acquitted or convicted, he cannot be charged again on the same facts in a more aggravated form. *R. v. Elrington,* 1 *B. & S.* 688; 31 *L. J. M. C.* 14, *Cockburn, C. J.; R. v. Miles,* 24 *Q. B. D.* 423; 59 *L. J. M. C.* 56. But this rule does not apply when the subsequent charge is that of murder or manslaughter. *R. v. Morris, L. R.* 1 *C. C. R.* 90, 36 *L. J. M. C.* 84; 10 *Cox* 480; *R. v. Salvi,* 10 *Cox* 481 *n.* And it is immaterial whether the first acquittal or conviction were in a summary proceeding or on indictment. *Wemyss v. Hopkins, L. R.* 10 *Q. B.* 378, 44 *L. J. M. C.* 101.

Under the double jeopardy clause of the Fifth Amendment to the Constitution, the Congress may lay down both a criminal and a civil sanction in respect of the same act or omission,

for the rule of double jeopardy prohibits "merely punishing twice, or attempting a second time to punish criminally, for the same offense:" and unless the "sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable. * .* * Where the objective of the subsequent action likewise is punishment, the acquittal is a bar, because to entertain the second proceeding for punishment would subject the defendant to double jeopardy; and double jeopardy is precluded by the Fifth Amendment whether the verdict was an acquittal or a conviction." *Helvering v. Mitchell,* 303 *U. S.* 391, 58 *S. Ct.* 630, 82 *L. Ed.* 917 (1937). A civil action to recover taxes, which are in fact penalties, is punitive in character and barred by a prior conviction of the defendant for a criminal offense involving the same transaction. *United States v. La Franca,* 282 *U. S.* 568, 51 *S. Ct.* 278, 75 *L. Ed.* 551 (1931). But the maxim has no application where there is a statutory forfeiture of property which constitutes no part of the punishment of the criminal offense. *Various Items of Personal Property v. United States,* 282 *U. S.* 577, 51 *S. Ct.* 282, 75 *L. Ed.* 558 (1931). The doctrine of *res judicata* has been invoked in cases where the rule of double jeopardy is not applicable. *Sealfon v. United States,* 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948).

## II.

Here, it was the possession of the contraband memoranda that constituted the subject of both prosecutions; and thus there was the requisite identity of offenses, even though criminal intent or "guilty knowledge" is an element of the one statutory class but not of the other and the permissible punishment is greater in the one case than in the other. It was suggested on the oral argument that unknowing possession is punishable under the Disorderly Persons Act, while knowing possession is the offense denounced by the Crimes Act, and so they are separate and distinct offenses and the judg-

ment in a prosecution under one statute is not a bar to a prosecution under the other. But knowing possession, as distinguished from knowledge of the illegal character of the subject matter, is equally an element of the offense rendered punishable under the Disorderly Persons Act, for otherwise seeming "possession" by accident or the design of another, without the knowledge of the accused, would suffice; and it is not within the competency of the lawgiver to render that criminal which in its very nature is innocent and essentially nonculpable. *Felton v. United States,* 96 *U. S.* 699, 24 *L. Ed.* 875 (1878); *Gillespie v. People,* 188 *Ill.* 176, 58 *N. E.* 1007 (1900); *Lawton v. Steele,* 119 *N. Y.* 226, 23 *N. E.* 878 (1890). "Some act of commission or omission lies at the foundation of every crime." *State v. Cooper, supra.*

"Possession" is an ambiguous term derived from the Roman law. It has variant connotations; but on well-settled principle the word is to be given a strict construction in statutes defining criminal and penal offenses. It signifies an intentional control and dominion. *Bergedorff v. United States,* 37 *Fed.* (2d) 248 (1929). *Animus possidendi* is of the essence of possession. Such was its primary meaning under Roman law. "Possession is the occupation of anything with the intention of exercising the rights of ownership in respect to it." *Hunter, Rom. Law* 209. Under the cited statutes, "possession" imports "corporeal possession in fact. * * * The elements of this possession are: First, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and, second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. All the authorities agree that an intent to exclude others must coexist with the external facts, and must be fulfilled in the external physical facts, in order to constitute possession. It is this requirement which prevents the man in whose building, or automobile, or traveling bag, or pocket, liquor is found, which

was surreptitiously placed there by another, from being a violator of the law." *State v. Metz,* 107 *Kan.* 593, 193 *Pac.* 177 (1920). See, also, *State v. Wagoner,* 123 *Kan.* 591, 256 *Pac.* 957 (1927); *State v. Colson,* 134 *Kan.* 147, 4 *Pac.* (2d) 414 (1931). There must be "conscious" possession. *People v. Leavitt,* 301 *N. Y.* 113, 92 *N. E.* (2d) 915 (1950). This definition has general acceptance. *Rice v. Frayser,* 24 *Fed.* 460 (1885); *People v. Mills,* 178 *N. Y.* 274, 70 *N. E.* 786 (1904); *Gossett v. Commonwealth,* 262 *Ky.* 540, 90 *N. W.* (2d) 730 (1936); *Schwartz v. State,* 192 *Wis.* 414, 212 *N. W.* 664 (1927); *Reynolds v. State,* 92 *Fla.* 1038, 111 *So.* 285 (1927); *People v. Wolosky,* 296 *N. Y.* 236, 72 *N. E.* (2d) 172 (1947); *People v. Gory,* 28 *Cal.* (2d) 450, 170 *Pac.* (2d) 433 (1946); *Hancock v. Finch,* 126 *Conn.* 121, 9 *A.* (2d) 811 (1939); *United States v. Curzio,* 170 *Fed.* (2d) 354 (1948); *New England Box Co. v. C. & R. Construction Co.,* 313 *Mass.* 696, 49 *N. E.* (2d) 121 (1943). The principle is embodied in the *Restatement of the Law of Torts, section* 216.

 Knowing possession is not to be confused with criminal intent or guilty knowledge. At common law, scienter is an indispensable element. The constituents of a criminal offense at common law are an evil intention and an unlawful act. *Actus non facet reum, nisi mens sit rea. State v. Woodward,* 99 *N. J. L.* 49 (*Sup. Ct.* 1923). But it is within the competency of the lawgiver, in the common interest, to declare an act criminal irrespective of the knowledge or motive of the doer of the act. The Legislature may make the doing of the prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown. *Halsted v. State,* 41 *N. J. L.* 552 (*E. & A.* 1879); *State v. Kuehnle,* 85 *N. J. L.* 220 (*E. & A.* 1913); *People v. Clark,* 242 *N. Y.* 313, 151 *N. E.* 631 (1926); *United States v. Balint,* 258 *U. S.* 250, 42 *S. Ct.* 401, 66 *L. Ed.* 604 (1922). See, also, *State v. Cutter,* 36 *N. J. L.* 125 (*Sup. Ct.* 1873). The criminal mind is not

essential where the Legislature has so willed. The doer of the act may be liable criminally even though he does not know the act is criminal and does not purpose to transgress the law. But it is quite another thing to assess with criminal or penal consequences the unknowing "possession" of contraband articles. That would constitute an abuse of the police power.

A corrupt or evil intent is not an element of the possession denounced by the Disorderly Persons Act; but there must be an intention to possess the forbidden papers. This statute and the Crimes Act deal merely with different degrees of the same offense. The unlawful possession cannot be split into two separate and distinct offenses, cumulatively punishable. The provision of the Disorderly Persons Act was a police measure designed to afford a speedy and effective remedy where the offense was less aggravating in circumstance. The two prosecutions concern the one supposed act of possession. The lesser offense is necessarily involved in the greater. Obviously, an acquittal of the accused of the lower offense of possession would constitute an acquittal of the possession constituting a high misdemeanor under the Crimes Act, for the criminal intent made an element of the latter is not an ingredient of the former. If not guilty of the lesser offense, he could not be guilty of the greater. If he were innocent of the modified offense, "he could not be guilty of the same fact, with the addition of malice and design." *State v. Cooper, supra; Chitty's Cr. L.* 455. By the same token, a conviction of the lesser offense is a bar to a prosecution of the greater. The lesser is a constituent of the greater. Apart from the principle of double jeopardy, a holding *contra* would do violence to the legislative purpose. It was not the intention to render the violator subject to double imprisonment for the one act of possession. Violations of the cited provision of of the Disorderly Persons Act are punishable by imprisonment for a term not exceeding one year, or by a fine not exceeding $175. *R. S.* 2:205–1.

"Disorderly conduct" is not an offense known to the common law. The category comprises minor offenses de-

nounced by statute below the grade of misdemeanors, and therefore punishable in a summary manner, yet *quasi*-criminal in essence and subject to the procedural rules governing criminal prosecutions. *State v. Rodgers,* 91 *N. J. L.* 212 (*E. & A.* 1917); *Levine v. State,* 110 *N. J. L.* 467 (*E. & A.* 1933); *McNeilly v. State,* 119 *N. J. L.* 237 (*Sup. Ct.* 1937); *State v. Burkitt,* 120 *N. J. L.* 393 (*Sup. Ct.* 1938); *Helvering v. Mitchell, supra; People v. Galpern,* 259 *N. Y.* 279, 181 *N. E.* 572, 83 *A. L. R.* 785 (1932); *People v. Pieri,* 269 *N. Y.* 315, 199 *N. E.* 495 (1936). Gaming and kindred offenses are alien to the common law, and are therefore triable and punishable summarily as "disorderly conduct." *State v. Murzda,* 116 *N. J. L.* 219 (*E. & A.* 1936).

 The police court was not deprived of jurisdiction by the course taken by the county prosecutor. The grant of jurisdiction is not thus conditioned. Neither *R. S.* 2:182-4, placing the prosecution of the criminal business of the State in the hands of the county prosecutor, nor *Rule* 8:3-3(d) of this court is directed to that end. Both have reference to indictable offenses, and not to prosecutions under the Disorderly Persons Act. This dual authority in matters of law enforcement undoubtedly gives rise to policy and administrative difficulties; but the remedy lies with the Legislature.

The judgment is affirmed.

*For affirmance*—Justices HEHER, WACHENFELD, BURLING and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE and OLIPHANT—3.