STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN McGRATH, DEFENDANT-APPELLANT.

Argued October 4, 1954—Decided December 13, 1954.

Mr. *Jack Prizzia* argued the cause for the appellant.

Mr. *Frank J. V. Gimino,* Assistant Prosecutor of Hudson County, argued the cause for the respondent (*Mr. Frederick T. Law,* County Prosecutor).

· The opinion of the court was delivered by

VANDERBILT, C. J. ██ ██ Three indictments were returned
on December 9, 1952 against the defendant by the Hudson
County grand jury, one for non-support of his wife, another
for threatening to kill her, and a third, with which we are
here concerned, containing two counts, the first count charg-
ing atrocious assault and battery and the second count charg-
ing simple assault and battery. All three indictments allege
that the defendant committed these offenses on July 27,
1952. At that time N. J. S. 2A:170–26, which was passed
December 5, 1951, effective January 1, 1952, was in full
force and effect, providing, among other things, that:

"Any person who commits an assault or an assault and battery is
a disorderly person."

Obviously the defendant should have moved to dismiss the
second count of the third indictment relating to simple assault
and battery because it was no longer an indictable offense.
For the same reason the State had a like responsibility, and
the trial judge should have acted on his own motion.

The defendant, having waived trial by jury, was found not
guilty on the two first indictments and the first count of the
third indictment charging atrocious assault and battery, but
guilty of the second count of the third indictment charging
simple assault and battery, which as we have seen was no
longer a crime. The finding of the trial court was obviously
made in the face of the quoted statute.

In *State v. Maier*, 13 *N. J.* 235 (1953), this court sus-
tained the constitutionality of *N. J. S.* 2A:170–26 down-
grading to disorderly persons offenses the former crimes of
assault and assault and battery. In due course a judgment
of conviction with suspended sentence was entered here, and
the defendant thereupon moved to set aside the judgment of
conviction on these grounds:

"1. The court was without jurisdiction to hear a case involving
assault and battery, and therefore could not convict of an offense
of which it did not have jurisdiction to hear, the local magistrate

having jurisdiction of assault and battery under the Disorderly Persons Act.

2. The indictment of Atrocious Assault and Battery No. 343, 2*A*:90–1, was dismissed and the Court could not convict of a lesser offense which it did not have jurisdiction to hear.

3. The crime of assault and battery is not an indictable offense.

4. The Court by its judgment and verdict cannot adjudge a defendant a criminal and stigmatize him as a criminal for a simple offense under the Disorderly Persons Act which should be tried by a local magistrate."

The trial court denied the motion and the defendant appealed, urging the same grounds as in his motion, and sought certification, which we granted. 10 *N. J.* 311. The defendant relies on the *Maier* case.

 The State concedes that since January 1, 1952, the effective date of *N. J. S.* 2*A*:170–26, there may not be an indictment for assault or assault and battery, but it maintains that there may nevertheless be a conviction of simple assault or simple assault and battery on an indictment for atrocious assault and battery (a high misdemeanor under *N. J. S.* 2*A*:90–1), without any reference in the indictment to simple assault or simple assault and battery, because, it is said, simple assault and simple assault and battery are component parts of the high misdemeanor of atrocious assault and battery and the Legislature has not undertaken to change the crime of atrocious assault and battery in any respect. Accordingly, the State maintains that on an indictment for atrocious assault and battery alone, the jury may return a verdict of guilty of simple assault or of simple assault and battery without finding the defendant guilty of atrocious assault and battery. But to do so is to completely ignore the plain direction of the Legislature that simple assault and simple assault and battery are disorderly conduct within the sole jurisdiction of the municipal court.

One has but to carry the notion advanced by the State through a trial for atrocious assault and battery to see how utterly unworkable it is, what confusion it must necessarily engender in an otherwise simple trial, and how inevitably it would defeat the legislative intent to make assault and

assault and battery disorderly persons offenses rather than crimes. The Legislature decided—and wisely—that if we are to achieve adequate law enforcement against such serious crimes of violence as murder, manslaughter, rape and atrocious assault and battery, particularly of the sort popularly known as mugging, the grand juries and the Superior Court and County Courts must not be burdened with every family row and backyard or apartment hall spat, or neighborhood fracas, but must be left free to deal with the more dangerous kinds of crimes, leaving these family and neighborhood offenses to the speedy and more effective disposition that can best be accorded them at the municipal level by the local magistrate. The Legislature, in downgrading simple assault and simple assault and battery to disorderly conduct, had in mind the host of such cases that were being sent up each year to the grand jury only to have no action taken on them by the grand jury, either because of lack of time due to its preoccupation with more serious offenses or because simple assault and battery seemed to it to be relatively unimportant. In this process many offenders against peace in the neighborhood have escaped all punishment for their misconduct. It was to prevent offenders from repeating their interference with their neighbors that the Legislature passed the statute above referred to in the interest of law and order at the local level.

The unworkability of the notion urged by the State may be demonstrated best by tracing its practical effect on a trial back from a jury verdict to the opening of counsel to the jury. If a jury on an indictment for atrocious assault and battery alone were to be permitted to bring in a verdict of guilty of simple assault or of simple assault and battery rather than a verdict of guilty of atrocious assault and battery as charged, it must necessarily be on the basis of a charge of the court authorizing it to do so. But the jury cannot be expected to know of its own knowledge without judicial instruction what offense or offenses are included within the crime charged when they are not mentioned in the indictment. The indictment, it must be remembered, goes with the jury

into the jury room and is used by it as the basis of its deliberations. If the judge may charge the jury on simple assault or simple assault and battery on such an indictment, what is he to say about the subject without doing violence to *N. J. S.* *2A* :170–26, *supra,* making these offenses disorderly conduct? To what statute may he refer, dealing with the simple assault or simple assault and battery as a crime? If the jury should ask, as it properly might, what is the punishment that he may inflict for simple assault or simple assault and battery in the pending suit in his court, what response may he make, and under what authority? And if the trial court may charge the jury as to simple assault or simple assault and battery not mentioned in the indictment for atrocious assault and battery alone, surely the trial court must listen to counsel's requests to charge on the matter. And if counsel is entitled to make such requests to charge and the judge is obliged to make such a charge with respect to simple assault and simple assault and battery on an indictment for atrocious assault and battery alone, it inevitably follows that counsel has a right to open to the jury on the subject and thus to convert what started to be a trial with a single issue—was the defendant guilty of atrocious assault and battery?—into a trial of two issues, one of which is not mentioned in the indictment. And throughout the trial counsel must be permitted to ask questions relating to offenses not mentioned in the indictment and no longer crimes, *i. e.,* simple assault and simple assault and battery, to the utter confusion of the jury. Under such a confusing state of the law he would be justified in taking full advantage of his privilege, perverting what should be a simple trial on a single issue into a complicated proceeding that would inevitably confuse the jury. And in the event of a verdict of guilty of simple assault or simple assault and battery, where is the warrant to be found for the trial court imposing sentence in the face of *N. J. S. 2A* :170–26, *supra?* What, we may ask, are the limitations, if any, on the sentence?

The problem is not peculiar to indictments for atrocious assault and battery. Thus, if the Legislature were to desig-

nate pickpocketing as an offense under the Disorderly Persons Act, could it be said that the Legislature intended that this issue could be injected into the trial of an indictment for the high misdemeanor of robbery, *N. J. S. 2A*:141–1? Or on the trial of an indictment for stealing property worth over $50, which is a high misdemeanor under *N. J. S. 2A*:119–2, should the jury be permitted to return a verdict of guilty of the offense against the Disorderly Persons Act of being present in a public place with intention to steal, *N. J. S. 2A*:170–3?

The reasoning of the Pennsylvania Supreme Court in *Commonwealth v. Comber*, 374 *Pa.* 570, 97 *A. 2d* 343 (1953), in an analogous situation is impressive. Pennsylvania follows the common law rule which prohibits the joinder of a trial for a misdemeanor with a trial for murder or voluntary manslaughter. In holding that there could be no conviction or acquittal of assault and battery or of aggravated assault and battery on an indictment and trial for murder or for murder and voluntary manslaughter, the court said:

"This conclusion or rule is supported not only by the aforesaid common-law rule which prohibits the joinder or conviction of a misdemeanor in an indictment for murder or voluntary manslaughter, as well as by prior opinions of this Court, but also in our judgment by reasons which are sound, practical and wise. If there could be a conviction of assault and battery on a murder bill the trial Judge would always have to charge the jury on first-degree murder, second-degree murder, voluntary manslaughter, and, certainly if requested, on aggravated assault and battery and simple assault and battery. This has never been done in the history of the Commonwealth. When we take into consideration the additional points the trial Judge must define in a murder case, such as presumption of innocence, reasonable doubt, and usually several others (depending upon the particular facts of that particular case) the jury would likely become so befogged by legal technicalities and so confused by the maze of the law as to make a clear comprehension, weighing and correlation of the facts exceedingly difficult, and the rendition of a just verdict both difficult and doubtful. Furthermore, the likelihood of a 'murderer' escaping his just punishment and being found guilty of aggravated assault and battery or simple assault and battery instead of one of the degrees of murder or manslaughter of which he was actually guilty would be greatly increased to the detriment of society." (97 *A. 2d* at *pages* 346–347)

■ Not only do the statutes in this case preclude the mingling in a single trial of indictable and non-indictable offenses, but the inconveniences that would result from such a course demonstrate the unwisdom of pursuing it. If on an indictment for atrocious assault and battery the jury returns a verdict of not guilty but it appears nevertheless that the defendant might be guilty of either simple assault or simple assault and battery, the trial court should direct that the defendant be turned over to the municipal court for trial on that issue, or the complaining witness may on his own motion proceed against the defendant under the Disorderly Persons Act, charging either simple assault or simple assault and battery.

But the State objects that to do so would constitute double jeopardy, citing *State v. Labato*, 7 *N. J.* 137 (1951). In that case it was held that the accused's conviction in the municipal court of the disorderly persons offense of the possession of lottery slips barred further prosecution for the crime of possession of lottery slips. There it was reasoned that since the crime and the offense were identical, except that proof of criminal intent was necessary to sustain a conviction of the crime, "obviously, an acquittal of the accused of the lower offense of possession would constitute an acquittal of the possession constituting a high misdemeanor under the Crimes Act, for the criminal intent made an element of the latter is not an ingredient of the former. *If not guilty of the lesser offense, he could not be guilty of the greater * * * by the same token, a conviction of the lesser offense is a bar to a prosecution of the greater.*" (at *page* 150 of 7 *N. J.*) (emphasis supplied.)

Here we do not have the identity of offenses that was present in the *Labato* case. The case at bar is very similar to *State v. Shoopman*, 11 *N. J.* 333 (1953), where we held that an acquittal of the offense of reckless driving under the Motor Vehicle Act was not a bar to an indictment for the crime of causing death by careless and heedless driving, the asserted defense of double jeopardy being disposed of in these words:

"Keeping in mind the constitutional provision set out, does the judgment of the court below contravene either the spirit or the language of the mandate or trespass upon fundamental justice? We think not, because 'reckless driving' and 'death by reckless driving' are not 'the same offense.' One is a crime; the other is not. Each is specifically and separately defined and the one has an element foreign to and not required in the other.

The two offenses are not identical and the evidence required to convict on the reckless driving charge, while admissible and relevant in proving the more serious offense, is not by itself sufficient to sustain the charge laid in the indictment." (at *page* 336 of 11 *N. J.*)

The *Labato* case was asserted as here but it was readily distinguished:

"It is inconceivable the legislative intent in adopting these separate enactments was merely to provide alternative punishments so that the imposition of one would be a bar to further prosecution, as in the *Labato* case, *supra*, for here the offenses are not identical nor are the wrongs of equal gravity.

The Legislature having established two separate offenses with different elements and different penalties, we think it cannot be logically said it designed one to be used as a bar to prevent a prosecution under the other. The rationale of the *Labato* case, *supra*, grounded as it is on the identity of the offenses, is not applicable to the facts here encountered.

Giving the customary meaning to the words and phrases employed, we think it clear the Legislature defined two separate and distinct prohibitions, one a crime under the Crimes Act for causing the death of the individual victim or victims by the operation of a vehicle in the manner prohibited, the other a regulation for the protection of the public at large as to the way and manner a motor vehicle is to be driven." (at *page* 340 of 11 *N. J.*)

Similarly, we are here concerned with offenses that are not identical. One is a crime, the other a disorderly persons offense. The one requires the element of atrociousness in the form of "maiming or wounding," *N. J. S.* 2*A*:90–1, "savage and cruel in character," *State v. Capawanna*, 118 *N. J. L.* 429, 431 (*Sup. Ct.* 1937), affirmed 119 *N. J. L.* 337 (*E. & A.* 1938), that is not present in the other. And the Legislature has provided widely different penalties for each—a maximum fine of $2,000 and imprisonment of seven years for the crime, *N. J. S.* 2*A*:85–6, but only a fine of $1,000 and imprisonment for one year for the disorderly persons offense, *N. J. S.* 2*A*:169–4.

More important, however, is the fact that we are not here confronted with the issue involved in the *Labato* case. In that case we were concerned with the effect of the conviction of the lesser offense upon a later indictment for the greater offense (the high misdemeanor of atrocious assault and battery) on a later prosecution for violation of the Disorderly Persons Act. Such an acquittal does not mean that the accused cannot be guilty of the offense of simple assault and battery, which unlike the crime requires no element of atrociousness.

The reason urged for prohibiting a further prosecution under the Disorderly Persons Act is that at the trial of the crime of atrocious assault and battery the court could have tried and returned a judgment of conviction or acquittal of the lesser offense included in that crime. But, as we have seen, the Legislature has taken jurisdiction over simple assault and simple assault and battery away from the Superior Court and County Courts, so that conviction or acquittal of the lesser offense is relegated to the municipal court.

A case precisely in point with the principle here involved is *Hilands v. Commonwealth*, 114 *Pa.* 372, 6 *A.* 267 (*Sup. Ct.* 1886), where the defendant entered a plea of double jeopardy to an indictment for involuntary manslaughter, claiming that upon a previous trial the jury had convicted him of murder in the first degree, which judgment had been reversed by the Pennsylvania Supreme Court, and that both crimes involved the same act. The trial court denied the plea and the defendant was convicted of involuntary manslaughter. The Supreme Court upheld the conviction saying:

"It is very evident the plaintiff can never be tried again upon any charge of which he might have been convicted upon the first indictment. * * *

But the protection extends no further than the offense charged in the first indictment, or of which he might have been convicted under it. He was not in jeopardy for any other offense. The first indictment charged murder. Under it he might have been convicted of murder of the first or second degree, or of voluntary manslaughter, but not of involuntary manslaughter. The latter offense is a mis-

demeanor. It must be charged as such, and cannot be included in an indictment charging felonious homicide, excepting in the case of an indictment for voluntary manslaughter, where it may be joined by force of the act of thirty-first March, 1860. *Walters v. Com.*, 44 *Pa.* 135. It follows that, when the plaintiff was put upon his trial for murder, he was placed in no jeopardy of a conviction for involuntary manslaughter.

If we regard the result of the first trial as the equivalent of an acquittal of the charge of murder, which is stating it in the most favorable form for the plaintiff, it does not help him. It does not follow that because the crime charged may not in law amount to felonious homicide, that it may not constitute a misdemeanor, and be punished as involuntary manslaughter. The failure of the commonwealth to convict of the higher crime does not preclude her from establishing a lesser crime, even though arising from the same state of facts. The evidence necessary to establish involuntary manslaughter is essentially different from that required to support an indictment for murder. It is said in *Com. v. Trimmer*, 84 *Pa.* [65], 69, that, 'when the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea of *autrefois acquit* is generally good, but not otherwise.' "

A like result was reached upon the same reasoning in *Commonwealth v. Comber, supra*, 374 *Pa.* 570, 97 *A. 2d* 343 (1953), where the Pennsylvania Supreme Court held, as we have seen, that an acquittal of murder did not bar a later indictment and trial for assault and battery and aggravated assault and battery arising out of the same offense. The court found that, since in an earlier prosecution on an indictment for involuntary manslaughter the defendant could have been convicted of assault and battery, an acquittal of involuntary manslaughter barred a later prosecution for assault and battery. See also *Commonwealth v. Greevy*, 271 *Pa.* 95, 114 *A.* 511 (*Sup. Ct.* 1921), *Commonwealth v. Duerr*, 158 *Pa. Super.* 484, 45 *A. 2d* 235 (*Super. Ct.* 1946).

In *State v. Wightman*, 26 *Mo.* 515, 516 (1858), the Supreme Court of Missouri discussed the very situation with which we are here concerned and concluded:

"An acquittal on an indictment for a felonious assault will not bar a prosecution for a common assault and battery before a justice of the peace, because the defendant, under the indictment, could not be convicted of the minor offense."

Nor are we without New Jersey authority on this question. In *State v. DiGiosia*, 3 *N. J.* 413, 419 (1950), Mr. Justice Heher in his opinion for the Court set forth the test to be implied in these cases:

"It has been said that the true test of former jeopardy is whether the evidence necessary to support the second indictment would have been sufficient to secure a legal conviction upon the first; but this is not an absolute rule. *Com. v. Roby, supra* [12 *Pick., Mass.,* 496] *Wharton's Criminal Law* (12th ed.), § 396. And where the accused may be convicted of a lesser offense included in the greater laid in the indictment, an acquittal or conviction of the greater offense is on grounds of former jeopardy a bar to a subsequent trial for the lesser offense. *Ibid.,* § 394, 396."

Applying this test to the case at bar it is at once obvious that the "evidence necessary to support the second indictment," here by analogy the charge of simple assault and battery in the municipal court, is not "sufficient to secure a legal conviction upon the first," namely atrocious assault and battery, because that crime unlike the disorderly persons offense involves a maiming or wounding, savage and cruel in character, *State v. Capawanna, supra,* 118 *N. J. L.* 429, 431 (*Sup. Ct.* 1937), affirmed 119 *N. J. L.* 337 (*E. & A.* 1938). It is also clear that the accused could not "be convicted of a lesser offense" in the County Court because that court lacks jurisdiction over the disorderly persons offenses, *N. J. S.* 2A:3–4.

Our conclusion is further justified on grounds of plain logic. Prior to January 1, 1952, the effective date of *N. J. S., Title 2A,* the County Court had jurisdiction to entertain an indictment for simple assault and simple assault and battery, which at that time were indictable offenses in this State, *R. S.* 2:103–1. Until that date an indictment for atrocious assault and battery could and as a matter of practice generally did contain a count for simple assault and simple assault and battery, or in the absence of such a count the jury could on an indictment for atrocious assault and battery return a verdict of guilty of the lesser offense. Therefore a judgment of that court, either of conviction or of acquittal, barred a later prosecution for either the greater or lesser offense because the court had jurisdiction over both as crimes, *State v.*

*Midgeley*, 15 *N. J.* 574, 579 (1954). But since January 1, 1952 only the municipal court has had jurisdiction over simple assault and battery as disorderly conduct. In effect, the very same determination of whether the accused is guilty of the lesser offense will be made as prior to January 1, 1952, but now in the municipal court instead of in the County Court. And upon the trial in the municipal court the defendant for the first time will be in jeopardy as to the lesser offense.

We therefore conclude that the County Court was without jurisdiction of the offense set forth in the second count of the third indictment, and therefore the judgment of conviction must be set aside. The case will be remanded to that court for compliance with this opinion.

HEHER, J. (dissenting). As stated in the dissent to the conclusions and judgment in *State v. Maier*, 13 *N. J.* 235 (1953), I hold the view that it was not the constitutional province of the Legislature to classify the perpetrator of an assault or an assault and battery as a disorderly person, subject to punishment as such, and for that reason I would affirm the judgment of conviction here.

But, on the contrary hypothesis, were the accused now to be prosecuted for assault and battery under the Disorderly Persons Act, *N. J. S.* 2A:170–26, there would be an equal violation of the cherished principle of natural justice, embedded in the common law even before King John's Magna Charta, that one may not be twice put in jeopardy for the same offense. Immunity from repeated jeopardy was one of the treasured basic liberties of the early common law secured against the encroachment of arbitrary power by *c.* 29 of the Great Charter. The constitutional and common law protection is not only against the peril of a second punishment, but also against a second prosecution for the same offense. *State v. Labato*, 7 *N. J.* 137 (1951). The plea of *autrefois acquit*, says Chitty, proceeds from the principle that "no man shall be placed in peril of legal penalties more than once upon the same accusation"; and the plea of *autrefois*

*convict,* that "no man shall be more than once in peril for the same offense." 1 *Chitty Cr. L.* 452, 455, 462.

Certainly, assault and battery is not a divisible offense for the purpose of two separate and distinct prosecutions and separate and distinct punishments. If the accused here had been convicted of atrocious assault and battery, would he also be liable to prosecution for assault and battery under the Disorderly Persons Act and liable to punishment according to that essentially punitive regulation? Save as otherwise provided, "a person adjudged a disorderly person shall be punished by imprisonment in the county workhouse, penitentiary or jail for not more than 1 year, or by a fine of not more than $1,000, or both"; and any person so adjudged who defaults in the payment of a fine laid against him is subject to commitment to one of the same penal institutions until the fine has been paid, at the rate of $3 for each day "he serves in such custody." *N. J. S.* 2*A*:169–4–5. If the gravity of the offense is to be assessed by the permissible punishment, then it is hardly one of minor consequence, not to mention the moral and legal stigma of guilt.

Assault and battery is not a divisible offense at common law, separable for the purposes of prosecution and punishment; and it is not, I suggest, within the constitutional power of the Legislature either to subject the offender to the given penal consequences under a different nomenclature designed to render inapplicable the constitutional guaranties of freedom from criminal prosecution unless on the indictment of a grand jury, and the right of trial by jury in criminal cases, or to deny immunity from double jeopardy, limitations upon absolute power confirmed by Magna Charta in the year 1215. That such was in the main the purpose of the new classification is not denied; indeed, it is offered as justification for the so-called downgrading" of the common-law crime of assault and battery.

As said by way of dissent in the *Maier* case, the common law does not classify assaults as to the degree of the offense, all assaults being misdemeanors; yet some assaults are deemed more grievous than common assaults in that, apart from the general intent to commit an assault, there was a

specific intent to do another act also criminal, as an assault with intent to murder, to rob, or to perpetrate a felony, referred to as "aggravated assaults" and punished more severely than simple assaults. But there are "no legal or technical differences, at common law, between assaults which are slight and assaults that are aggravated," and they "were not recognized as distinct and separate crimes, but assaults more or less aggravated according to the facts of each case were in judicial discretion subjected to heavier penalties." *Burdick's Law of Crimes, section* 345.

A battery, or, as it is usually called, an "assault and battery," is a consummated or completed assault. They are two separate and distinct offenses, an assault being an unsuccessful attempt to commit a battery, and a battery being the "accomplished act," and so every battery includes an assault; and where the evidence does not show a battery, there may be a conviction for assault, and it follows that, if there be an acquittal, then the plea of *autrefois acquit* is a complete bar to a later prosecution for the assault alone. The bodily harm constituting a battery may be slight or it may be great. *Burdick's Law of Crimes, sections* 350, 351.

By statute, aggravated assaults have been made felonies, in this State high misdemeanors, and the specific intent required by the statute is of course an essential ingredient of the offense. But in a battery, a general criminal intent suffices at common law. *Burdick's Law of Crimes, section* 352. Here, also, it is settled doctrine, and such has been the rule in New Jersey heretofore, that there may be a conviction of assault or assault and battery on the trial of an indictment charging the offense of the higher grade, and an acquittal bars prosecution for the offense of the lower grade.

It is the general rule that whether a person accused of a minor offense be acquitted or convicted, he cannot be charged again on the same facts in a more aggravated form. This is the rule at common law. The authorities are to be found in the *Labato* case. And it is immaterial whether the first acquittal or conviction were in a summary proceeding or on indictment. *Wemyss v. Hopkins, L. R.* 10 *Q. B.* 378, 44 *L. J. M. C.* 101.

Where "the fact prosecuted" is the same in both prosecutions, though the offenses differ "in color and degree," there is prior jeopardy; a prosecution "for any part of a single crime bars any further prosecution based on the whole or a part of that crime." *State v. Labato, supra.* The principle was long since settled in *State v. Cooper,* 13 *N. J. L.* 361 (*Sup. Ct.* 1833), and reiterated in *State v. Rosa,* 72 *N. J. L.* 462 (*E. & A.* 1905), and *State v. Mowser,* 92 *N. J. L.* 474 (*E. & A.* 1919). "The same act may not be twice punished by the same sovereignty, merely because it violates two laws." *Copperthwaite v. United States,* 37 *F. 2d* 846 (*C. C. A.* 6 1930). The question, said Justice Drake in *State v. Cooper, supra,* is whether "the offenses charged are essentially severable and hence distinct, and one is not included in the other." Here, we have but one act and one intent; the assault and battery cognizable under the terms of the Disorderly Persons Act was of necessity an integral part of the offense charged in the indictment. The principle is elucidated in 15 *Am. Jur.* 56, 58, and the cases cited in the footnotes, including our own case of *State v. Mowser, supra:* "Same offense" means not only the same offense "as an entity," but also any integral part of such offense which may subject the offender to punishment. The basic doctrine is exemplified in *Re Nielsen,* 131 *U. S.* 176, 9 *S. Ct.* 672, 33 *L. Ed.* 118 (1888); *People v. Stephens,* 79 *Cal.* 428, 21 *P.* 856, 4 *L. R. A.* 845 (*Sup. Ct.* 1889).

There is no occasion now to advert to the jurisdictional difficulties in relation to the administration of criminal justice in the particular field * * * of determining at the outset in a given case which statute applies and the jurisdiction to be invoked.

Mr. Justice Oliphant and Mr. Justice Burling join in this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices WACHENFELD, JACOBS and BRENNAN—4.

*For affirmance*—Justices HEHER, OLIPHANT and BURLING —3.