### UNITED STATES v. LE FANTI.

(District Court, D. New Jersey. January 22, 1919.)

1. RECEIVING STOLEN GOODS ⬤⟶4—ACTUAL POSSESSION—NECESSITY.
   In statutes denouncing the receiving of stolen goods, actual manual or personal possession is not a necessary element of the crime, it being sufficient if possession is constructive, if goods are shown to be under control of person charged though in actual physical possession of another.

2. RECEIVING STOLEN GOODS ⬤⟶4—CONSTRUCTIVE POSSESSION.
   If constructive possession of stolen goods is relied on to make out defendant's guilt of receiving them, and it appears that arrangement by which he was to acquire possession or title had not been consummated, as where he was still bargaining, such possession would not justify conviction.

3. RECEIVING STOLEN GOODS ⬤⟶4—INTERSTATE SHIPMENT OF EXPRESS—CONSTRUCTIVE POSSESSION BY AGENTS.
   Saloon keeper, who, when express employés offered to sell him stolen bale of silk, told them to drive to dump and throw it off, which they did on signal from him, he having followed and passed them in his automobile, held to have had possession of silk by his agents justifying conviction of having possession of stolen goods, part of an interstate shipment of express, in violation of Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604).

4. CRIMINAL LAW ⬤⟶877—JOINT INDICTMENT—SINGLE CONVICTION.
   Assuming that two of three jointly indicted for receiving stolen goods could not be convicted because they were the thieves, the third was subject to conviction.

5. RECEIVING STOLEN GOODS ⬤⟶3—BELIEF THAT GOODS WERE EMBEZZLED.
   When goods forming part of interstate shipment of express had been stolen in strict legal sense, and had come into possession of defendant,

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

who believed from circumstances they had been either embezzled or stolen, he can be convicted for having in possession such goods, in violation of Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604).

6. CRIMINAL LAW ☞829(1)—INSTRUCTION—REPETITION.

Defendant's request for instructions, quite comprehensively covered in court's main charge, was properly refused, particularly where charge in defendant's language would have tended to confuse rather than assist the jury.

7. CRIMINAL LAW ☞372(1)—EVIDENCE—PREVIOUS SIMILAR TRANSACTION—RECEIVING STOLEN GOODS.

In prosecution for having in possession stolen goods, part of an interstate shipment of express, in violation of Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), testimony relating to similar transaction four or five days before *held* admissible.

Dominick Le Fanti was convicted of receiving stolen goods, part of an interstate shipment of express, knowing the same to have been stolen. On rule to show cause why verdict of guilty should not be set aside and new trial granted. Rule discharged, and new trial denied.

Charles F. Lynch, U. S. Atty., and Samuel I. Kessler, Asst. U. S. Atty., both of Newark, N. J.

Louis G. Morten, of Jersey City, N. J., for defendant.

HAIGHT, District Judge. The defendant, Dominick Le Fanti, was indicted jointly with Joseph A. Reaves and Frank McManus, for having in their possession a bale of silk which had theretofore been stolen from a platform or depot of the American Railways Express Company, at Jersey City, in this district, and which was a part of an interstate shipment of express, knowing the same to have been stolen, in violation of Act Feb. 13, 1913, c. 50, 37 Stat. L. 670 (Comp. St. §§ 8603, 8604). Le Fanti (hereinafter referred to as the defendant) was tried alone and convicted. While I have never entertained any doubt that the verdict of the jury, under the instructions of the court, was entirely correct, I allowed the rule to show cause, so that I could consider, more carefully than it was possible to do during the course of the trial, the question whether, under the aspect of the evidence most favorable to the government, the defendant had the goods in question "in his possession" within the meaning of the act. Upon the return of the rule to show cause some additional reasons for setting aside the verdict, which were not urged during the trial, have been advanced. They will be hereafter discussed. I will first take up the question above stated.

[1-3] 1. It was permissible, and the jury were quite justified in finding—and under the instructions which they received their verdict establishes that they did find—the following facts: McManus and Reaves, two boys aged 16 and 24, respectively, who were employés of the American Railways Express Company, on the morning of September 17, 1918, stole a bale of silk which was a part of an interstate shipment of express, from the platform or depot of the express company, in Jersey City. During the early evening of the same day, they drove the wagon in which they had been making deliveries of express

packages during the day, and which bore the name of the Wells-Fargo Express Company, plainly written thereon, to defendant's saloon for the purpose of selling to him the bale of silk, as they had done with another bale four or five days previous. Reaves first went into the defendant's saloon, to interview the defendant, whereupon the latter told him to drive away, as his place of business was being watched. Thereupon the two boys drove around the block, and Reaves waited while McManus went back to find out what disposition the defendant wished them to make of the silk. The latter, upon being advised by McManus that he and Reaves had a bale of silk on their wagon, told McManus to drive "to the dumps," a dark and lonely spot used for dumping a part of the city's refuse, and drop the bale of silk off the wagon, and that he would follow in an automobile and pick it up. The two boys then proceeded to do as the defendant had directed them. On their way towards the "dumps," the defendant passed them in an automobile and motioned to them to keep going on in the direction in which they were proceeding, and which led to the "dumps." The lights on his automobile were at that time lighted. When they reached the "dumps," the lights on the automobile were extinguished, and the defendant made a motion with his hand, which the boys interpreted to be a signal to put the bale of silk off; which they accordingly did, among some weeds. McManus then drove the wagon to the express company's stable, while Reaves waited five or ten minutes for Le Fanti to come after the silk, and, when he did not do so within that time, Reaves went home. Both he and McManus were arrested that evening, as was also Le Fanti. The bale of silk was found in the place where the boys had deposited it. There was no evidence that defendant ever had it in his physical possession. His possession, if any, therefore, was constructive. The statute under which the defendant was indicted and convicted, so far as the point in question is concerned, differs in no material respect from the English statutes and those of the various states which have endeavored to bring within the pale of the criminal law receivers of stolen goods. It has long been settled that, under such statutes, actual manual or personal possession is not a necessary element of the crime, but it is sufficient if the possession be constructive, that is to say, if the goods are shown to have been under the control of the person charged, although they were in the actual physical possession of another. Reg. v. Wiley, 15 Jurist, 134; Reg. v. Smith, 1 Jurist (N. S.) 575; Reg. v. Hobson, 6 Cox, C. C. 410; Reg. v. Miller, 6 Cox, C. C. 353; Reg. v. Rogers, 2 Moody's Crown Cases, 85; Commonwealth v. Kuperstein, 207 Mass. 25, 92 N. E. 1008; State v. Stroud, 95. N. C. 626; State v. Conklin, 153 Iowa, 216, 133 N. W. 119; Huggins v. State, 41 Ala. 393; Kaufman v. State, 70 Tex. Cr. R. 438, 159 S. W. 58; Commonwealth v. Light, 195 Pa. 220, 45 Atl. 933; 2 Bishop on Criminal Law, § 1139; 2 Wharton's Criminal Law (11th Ed.) p. 1453, § 1236.

Of course, if constructive possession is relied upon, and it appears that the arrangement by which the accused is to acquire possession or title has not been consummated, but is still inchoate—as where the accused is still bargaining to purchase or acquire the goods—such pos-

session would not justify a conviction of the accused, for under such circumstances the goods would not be under his control in the sense required by the before-mentioned rule. And this is the principle upon which the decisions in Reg. v. Hill, 13 Jurist, 545, Reg. v. Wiley, 15 Jurist, 134, and Commonwealth v. Sheriff, 3 Brewst. (Pa.) 342, were rested. The question then is whether, under the before stated facts, the transaction under which the defendant was to acquire "actual" possession of the stolen silk had been so far consummated, prior to the recovery of the same by government officials, as to justify the conclusion that it was constructively in his possession, or whether the necessary conclusion was that the transaction was incomplete, so that there was a locus penitentiæ, until he should himself, or through agencies other than Reaves and McManus, have taken actual possession of the same. I perceive no difficulty, either on principle or authority, in holding that, although Reaves and McManus were the thieves. their actual possession could in law be the defendant's possession quite as well as could the possession of any other persons, who were not the thieves, be his possession. Such I think is the clear effect of the decisions in Reg. v. Wiley, supra; Reg. v. Smith, supra; State v. Stroud, supra; and Kaufman v. State, supra. In fact, Lord Chief Justice Campbell said in Reg. v. Smith that it had been held in Reg. v. Wiley (in which he sat) that possession might be jointly in the receiver and the thief. On principle this must be so, because the decisive point is whether the person who had actual possession was the mere agent of the defendant, and not what his connection with the stolen goods may theretofore have been. Of course, the latter consideration may be an element in determining whether or not he was a mere agent, and hence whether the transaction had been consummated in the sense before mentioned.

If the jury believed the story of Reaves and McManus as outlined in the before-recited statement of facts, as their verdict demonstrates that they did, there would seem to be no question that, at least from the time the bale of silk was thrown off of the express wagon at the "dumps," it was in the constructive possession of the defendant, for it was then under his control, in a place where he had directed the boys to take and deposit it, and where he had arranged with them, prior to their taking it there, that he would come and pick it up. They had followed his instructions in all respects. Indeed, the conclusion seems quite irresistible that, under the circumstances of this case, from the time he first told them what to do with the silk, that they were from thence on merely his agents, and that their possession was his. There was nothing inchoate so far as the transaction by which he was to acquire actual possession was concerned. His ultimate actual possession was not dependent upon any agreement to be made as to price, or anything of the sort; nothing remained to be done so far as consummating the bargain was concerned; he directed the boys what to do with the silk, and they followed out his instructions. Indeed, the facts of this case cannot be well distinguished from those which were before the courts in State v. Stroud, supra, and Kaufman v. State, supra. Although no exception has been taken to the

charge on this point, except as it is embraced within the question under discussion, I have carefully examined it, and think that it properly stated the before-mentioned rules of law and submitted the decisive question to the jury. The jury, after being instructed that there was no testimony to the effect that the defendant had ever had physical control of the bale of silk and that it was not necessary that he should have had such, it being sufficient if it was in the possession of some one else and was there subject to his control and dominion, and as to the circumstances under which the boys could be considered as to his agents, were charged as follows:

"If you believe the story of McManus, supplemented as it is by the additional testimony of Reaves, as to what was done and as to his first conversation with Le Fanti, then you would be justified in finding that these goods, from the time that Le Fanti told McManus what to do with them, were in the possession of Le Fanti, in law. If he was exercising—and this is the question which you have got to determine—control and dominion over them, from that point on they were in his possession, even though they were in the actual, physical possession of some third party."

I therefore conclude that the jury's finding that the defendant had the stolen bale of silk in his possession within the meaning of the Act of February 13, 1913, was correct.

[4] 2. It is next urged on behalf of the defendant that because he, McManus, and Reaves were jointly indicted for having the bale of silk in their possession, and because the evidence shows that the latter two were the thieves, the conviction should be set aside. This contention is based on the proposition that, because they were jointly indicted, a joint possession must be proved, and that there can be no joint possession in law between the thieves and the receiver because the thieves could not also be receivers. Assuming for the purpose of argument, as defendant contends, that the original thieves could not, under the statute in question, be convicted for having the "stolen goods in their possession" as has been held under similar statutes in some of the states (Tobin v. People, 104 Ill. 565; Owen v. State, 52 Ind. 379; In re Henry Franklin, 77 Mich. 615, 43 N. W. 997. See, contra, U. S. v. Sullivan [D. C. E. D. Pa.] 250 Fed. 632, construing the act in question), I am unable to conclude that the defendant could not alone have been convicted under this indictment. It has been several times decided that, where two or more are jointly indicted for having received stolen goods, one may be acquitted and the other convicted; and when the evidence demonstrates that the receipt was not joint, but separate and successive, the first receiver may be convicted and the other acquitted. Com. v. Slate, 11 Gray (Mass.) 60; State v. Smith, 37 Mo. 58 (in both of which the English cases are reviewed and distinguished); Com. v. Billings, 167 Mass. 283, 45 N. E. 910. Such seems also to have been the decision in U. S. v. Montgomery, Fed. Cas. No. 15,800. In that case one of the two defendants who were jointly indicted for receiving the stolen property was discharged from the indictment on his plea of autrefois convict, but the conviction which he apparently pleaded was of having been the thief. His acquittal was seemingly based on the theory that he could not be convicted both of stealing and

receiving the same goods. If that is so, then that case is directly in harmony with the others just cited. Those cases but recognized and applied the well-settled rule of criminal procedure that, where several persons are jointly indicted and tried for an offense which may be committed by one person alone, one or more may be convicted and the others acquitted, or there may be a disagreement as to the others; for such an indictment, although joint in form, is regarded as a several charge against each defendant. See cases cited 16 C. J. 1104, § 2591; 22 Cyc. 376; and Wharton's Criminal Procedure (10th Ed.) vol. 1, § 363. A fortiori the same rule applies when only one of two or more jointly indicted is tried and the evidence demonstrates that one or more of the others is or could not be guilty of the offense charged.

[5] 3. It is next contended that the verdict should be set aside because the evidence demonstrated that the defendant knew or believed that the bale of silk had been "embezzled" quite as forcibly as it did that he believed it had been "stolen," and that consequently, as his knowledge was sought to be proved by circumstantial evidence and as the indictment charged him with knowledge that the silk had been stolen as distinguished from embezzled, or otherwise unlawfully obtained, the evidence was not sufficient to justify a verdict that it had been "stolen." There was ample evidence to justify the jury in finding that he had knowledge that it was either embezzled or stolen (using the latter word in a strict and narrow sense). Indeed, if the jury disbelieved (as their verdict demonstrates that they did) the defendant's improbable story, it would have been quite impossible for them to have reached any other conclusion than that the defendant did have such knowledge. The question therefore is whether, under a statute such as the indictment in this case is based upon, it is necessary for the government to show that the defendant had knowledge that the goods had been "stolen as distinguished from embezzled." The statute while making it a crime for any one to "steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain," etc., imposes a criminal responsibility upon a receiver of "any such goods and chattels" only when he knows "the same to have been stolen." The indictment charges that the defendant knew that the silk "had been stolen." I think that the correct rule on the point in question is that stated by the Supreme Judicial Court of Massachusetts in Com. v. Leonard, 140 Mass. 473, at 478 and 479, 4 N. E. 96, 102 (54 Am. Rep. 485), as follows:

"If the property had actually been stolen, a belief on the part of the defendant that it had been stolen is tantamount to knowledge. If the defendant knew all of the facts, and the facts constituted larceny, as distinguished from embezzlement, it would be no defense that the defendant thought that the facts constituted embezzlement. If the defendant did not know the facts, but believed, from the circumstances, that the property had been either embezzled or stolen and it had been actually stolen, it was competent for the jury to find the defendant guilty of the offense charged. The second request for instructions was therefore rightly refused."

In that case the defendant was charged with knowledge that the property had been "feloniously stolen, taken, and carried away." The second request, referred to in the above-quoted extract of the opinion which was refused, was as follows:

"To justify a conviction, it is not sufficient to show that the accused had a general knowledge of the circumstances under which the goods were stolen, unless the jury are also satisfied that he knew that the circumstances were such as constituted larceny."

It will be borne in mind that the offense charged in that case was not embezzlement; in fact, the court, in the opinion, pointed out that under the Massachusetts statute "the offense of receiving stolen property, knowing it to have been stolen, must be considered as distinct from the offense of receiving embezzled property, knowing it to have been embezzled," and that the punishment of the two offenses might be different. According to the rule announced in that case, it was therefore competent for the jury to find the defendant guilty of having in his possession the stolen silk, "knowing that it had been stolen," upon proof, either direct or circumstantial, that he believed that it had been "either embezzled or stolen," when the proofs demonstrated, as they did in this case, that it had been actually stolen, as distinguished from embezzled. Not only does that rule seem to me to be a reasonable and sensible one, but it has the support of a court to whose decisions very great weight is always accorded. It has been many times held that belief that goods have been stolen is tantamount to knowledge. Com. v. Kronich, 196 Mass. 286, 82 N. E. 39; State v. Gargare, 88 N. J. Law, 389, 95 Atl. 625, L. R. A. 1916C, 991, Ann. Cas. 1917D, 950; cases cited in 34 Cyc. 516, and subsequent annotations.

The rule relieves the government of the impossibility which would be presented in the great majority of cases, where knowledge is sought to be imputed from facts and circumstances, of proving that the accused actually knew or believed that the goods were stolen, as distinguished from embezzled, or vice versa. No injustice is done' to an accused who believes that goods have either been stolen or embezzled, in holding that under such circumstances he had knowledge that they had been stolen, when they in fact were. And thus a reasonable interpretation, and one in harmony with what must have been the intention of the Legislature, is given to a statute such as this. It is inconceivable that Congress intended that such a narrow construction should be given to the phrase "knowing the same to have been stolen," as would require an acquittal of a person who had received "stolen" goods, and who, from the circumstances, knew that they had either been stolen or embezzled, but was not sure which. It is unreasonable to assume that Congress was not fully aware that, in the great majority of cases, knowledge would have to be established by circumstances which would be quite as susceptible of a finding that the defendant believed that the goods had been embezzled as that they had been stolen. I do not wish to be understood as holding that if in any given case the proofs demonstrate that goods were "embezzled" rather than "stolen" (using that word in a strict sense), that a defendant might be held guilty, under this statute, upon proof of knowledge that they had been stolen or embezzled. I do not find it necessary to pass upon that question in this case. This is not a case, as State v. Fink, 186 Mo. 50, 84 S. W. 921, where one is charged with receiving stolen goods, and the proofs demonstrate that the goods were not in fact stolen but were

embezzled. It may be that there has been an omission in the act to include within its provisions those who receive goods which have been unlawfully acquired in any of the ways mentioned in the act other than stealing, strictly speaking. What I decide is that when it has been demonstrated that goods have been "stolen" (using that word in a strict sense), and they have come into the possession of another, and that person believed from the circumstances that the property had been either "embezzled" or "stolen," it is competent on such proof under this statute for the jury to find him guilty of having had in his possession stolen goods, knowing the same to have been stolen, the offense denounced by the statute.

[6, 7] 4. The other reasons advanced for disturbing the jury's verdict, which have not been covered by what has already been said, relate to a refusal to charge the jury in the language requested by the defendant, and in the admission in evidence of testimony relating to a transaction whereby the defendant, four or five days previous to the date in question, acquired another bale of silk from these defendants. The second request was quite comprehensibly covered in the main charge, I think, and to have acceded to the defendant's request and charged in the language requested by him would have tended to confuse rather than assist the jury. The evidence the reception of which is objected to was admissible, I think, under well-settled rules of evidence. The circumstances surrounding the acquirement by the defendant of the previous bale of silk, which was the subject-matter of the testimony in question, was sufficient to justify the jury in finding that the defendant must have believed that the same had been stolen or otherwise unlawfully acquired by Reaves and McManus. It also made intelligible the testimony of Reaves and McManus as to the circumstances surrounding his acquirement of the bale of silk which was the subject-matter of the indictment upon which he was tried and convicted.

The rule to show cause will therefore be discharged, and a new trial denied.