77 N.J. Super. 49 (1962)
185 A.2d 393
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER BOZEYOWSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1962.
Decided November 1, 1962.
*51 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Richard Silver, court-assigned counsel, argued the cause for appellant.
*52 Mr. Peter Murray, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney; Mr. Murray, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant Bozeyowski appeals his conviction for the crime of receiving stolen goods.
The Essex County grand jury returned an indictment in three counts respectively charging defendant and one Pierson with (1) entering the warehouse building of George Rapp, Inc., with intent to steal, contrary to N.J.S. 2A:94-1; (2) larceny of beer worth $800, a Ford truck worth $1,000, and a Chevrolet truck worth $1,000, all of a total value of $2,800, the property of George Rapp, Inc., contrary to N.J.S. 2A:119-2; and (3) knowingly receiving the Ford and Chevrolet trucks, total value $2,000, the property of the corporation, contrary to N.J.S. 2A:139-1.
On the first day of trial, and before the opening statements of counsel, the State moved to amend counts 2 and 3. Count 2 was to be amended to state the value of the beer as $1,679, and the total value of the stolen property as $3,679. The third count was to include the beer, valued at $1,679, the total value of the stolen property received being changed to $3,679. Counsel for both defendants specifically stated that they had no objection to the motion. The motion was thereupon granted and the counts amended.
The jury found Pierson guilty on counts 1 and 2 and acquitted him on count 3. Defendant was acquitted on counts 1 and 2 and convicted on count 3.
During the night of November 23-24, 1960, the warehouse of George Rapp, Inc., a beer distributor, was entered and a large number of cases of bottled and canned beer taken. Also stolen were two company trucks, a Ford and a Chevrolet. Newark police officers Bossert and Buttros testified that while cruising in their patrol car that night they received a call at 1:10 A.M. assigning them to investigate suspicious persons at Fourth Avenue and Fifth Street, Newark, *53 unloading a truck which might contain stolen beer. They proceeded to the area and saw two men lifting beer cases on top of an open rack-body truck alongside the Venetian Tavern. The patrolmen parked their car some 20-25 feet behind the truck and got out. Both positively identified the two men as Bozeyowski and Pierson. When the men saw the officers they put down the cases, got off the truck, and proceeded to walk away nonchalantly. Bossert called to them to come back, but they increased their pace and when they got to the corner about 20 feet away, turned the corner and ran. Bossert followed in immediate pursuit and apprehended defendant after a brief chase. Pierson had disappeared, but was soon picked up by another policeman.
That the Rapp warehouse was unlawfully broken into and entered is not disputed and was testified to in detail. John Captor, president of the Rapp company, testified that about 450 cases of beer were missing from the warehouse, as were the Ford and Chevrolet trucks which were kept parked in front. When he went to the precinct station he was shown and identified the two missing trucks. He again identified the trucks from photographs at the trial. Bossert had previously identified one of the photographs as the Chevrolet truck on top of which he saw defendant and Pierson, and photographs of the Ford truck as the truck found parked on Fourth Avenue. Captor testified that when he went to the police station garage he found 238 cases of beer on the trucks and the floor. He then went to the Venetian Tavern and saw 179 cases of beer in the cellar. He said that about two or three days later another 30 cases were found in a side room in the tavern cellar, but an objection to this testimony was sustained. The total of 447 cases  brands handled by Rapp  was returned to the company. Captor admitted he could not positively identify the cases of beer in the cellar as Rapp's.
There was testimony concerning an alleged out-of-court oral confession made by Pierson, but the court gave limiting *54 instructions to the jury that this statement had no evidential value as against defendant and could not be considered evidence of his guilt.
Defendant moved at the close of the State's case to dismiss the indictment. The motion was denied.
Bozeyowski took the stand on his own behalf and testified that he had spent the day, from about 11 A.M. to shortly after midnight, drinking at the Ritz Tavern in Newark. By the end of the evening he felt "dizzy and woozy." He and Pierson then went in Pierson's car to the Venetian Tavern, allegedly in search of work and to look for women. As they were about to enter the bar he noticed a truck with a group of men, and then saw the police car pull up. When the men started to run, he ran also. He explained that he did so because he was on parole and knew he had no business being at a bar at that hour of the night and in his condition.
Shortly after the trial defendant moved for an order setting aside the verdict and granting a new trial. The only grounds assigned were that the verdict was "based upon passion, prejudice and compromise and was contrary to the weight of the evidence." The motion was denied. Thereafter the County Court judge sentenced Bozeyowski to a 3-5-year State Prison term. The court granted his motion to vacate the sentence and resentenced him to serve a 2-3-year term. Defendant then appealed.

I.
Defendant's first contention is that having been indicted jointly with Pierson for both larceny and receiving, it was error to convict him of receiving stolen goods at the same time that Pierson was convicted of larceny. This contention was not advanced on the motion for a new trial. The theory behind defendant's argument is that since the indictment charged him and Pierson with acting in concert, each man was in fact the alter ego of the other. Convicting Pierson of larceny and defendant for receiving the same goods was therefore tantamount to convicting defendant of receiving *55 the very property he was guilty of stealing. Defendant contends that the only verdicts possible were: both guilty of larceny, both guilty of receiving, or one guilty of either larceny or receiving and the other not guilty.
The State readily agrees that a person cannot be convicted of stealing and receiving the same goods. State v. Shelbrick, 33 N.J. Super. 7, 10 (App. Div. 1954). But such is not the case here. As the trial judge pointed out on the motion for a new trial, the question whether defendant and Pierson were together all night was one of fact for the jury to decide. He also pointed out that there was no direct evidence that defendant was involved in the larceny.
An indictment charging both larceny and receiving is not improper. State v. Friedman, 98 N.J.L. 577 (E. & A. 1923). Defendant relies on the Shelbrick case in support of his first point. That case merely holds that the same person cannot be guilty of both larceny and receiving. The court went on to say, however, that the two offenses may be asserted in separate counts of an indictment, citing State v. Friedman, above, even though convictions on both counts would be repugnant. Further, that where the two offenses are joined and there is a jury question as to whether the defendant is the thief or the receiver, "the proper practice is for the court to charge the jury that they should specify the particular offense if a verdict of guilty is found." (33 N.J. Super., at page 10.) And see State v. Coggin, 30 N.J. 129, 131 (1959). This was done, and the jury then proceeded to find defendant guilty only of the crime of receiving.
In United States v. LeFanti, 255 F. 210 (D.C.N.J. 1919), affirmed 259 F. 460 (3 Cir. 1919), the defendant was jointly indicted with thieves for receiving stolen goods. He argued that because he was jointly indicted, his conviction should be set aside. The court held it to be well settled that "where two or more are jointly indicted for having received stolen goods, one may be acquitted and the other convicted." (255 F., at page 214.)
*56 We conclude that defendant could be convicted of receiving stolen goods as long as the requisite proofs were present.

II.
Defendant next argues that it was error to deny his motion for judgment for acquittal at the close of the State's case. The test on such a motion is whether there is any legal evidence before the jury, viewing the proofs in their entirety and giving the State the benefit of all proper inferences therefrom, from which a conclusion of guilt could properly be drawn. State v. Smith, 32 N.J. 501, 521 (1960). We find that the State's proofs met that test. The same is true with respect to the denial of defendant's motion at the close of the entire case.
In this connection it is appropriate to comment upon defendant's claim that a conviction cannot be had on circumstantial evidence alone. In the first place, the State's case did not depend solely on circumstantial evidence. The two police officers positively identified defendant as one of the men standing on top of the truck unloading beer. The truck was proved to have been stolen, the beer inferentially so. There was direct proof of flight, a circumstance tending to show consciousness of guilt. Left for jury resolution was the probative force of defendant's explanation for his running from the scene. State v. Petrolia, 45 N.J. Super. 230, 233-5 (App. Div. 1957), certiorari denied 355 U.S. 492, 78 S.Ct. 431, 2 L.Ed.2d 422 (1958).
But even were the State's evidence entirely circumstantial, we consider it to have been of such quality as to be sufficient, in and of itself, to sustain the guilty verdict. The rule is well settled that "conviction may be had on circumstantial evidence alone provided the evidence is so clear and strong as to convince the jury, beyond a reasonable doubt, of the guilt of an accused." State v. Donohue, 2 N.J. 381, 389 (1949). Indeed, it has been said that circumstantial evidence is often "more certain, satisfying and persuasive than direct evidence." State v. Goodman, 9 N.J. 569, 581 *57 (1952). We note, in passing, that the trial judge adequately and correctly charged the jury as to circumstantial evidence.
Defendant suggests that there was no proof the beer was stolen. The State admits that the cases Captor saw at the precinct station and in the tavern cellar the next day were not specifically identified as those taken from the Rapp warehouse. But there was strong circumstantial evidence that the number of cases found was approximately equal to the number stolen from the warehouse. The brands of beer were the same as Rapp distributed. That aside, the indictment also included a charge of receiving the stolen trucks. There can be no question whatever that the trucks were stolen, nor does defendant claim otherwise.
Defendant also argues that there was no evidence to show that he had possession, and therefore could not be convicted of receiving stolen property. The crime of receiving stolen property envisages possession or control as an essential element.
Defendant relies upon State v. Labato, 7 N.J. 137 (1951), which concerned the crime of possessing lottery slips in contravention of R.S. 2:147-3 (now N.J.S. 2A:121-3). The court there held that the word "possession" had variant connotations, but had to be given a strict construction in statutes defining criminal and penal offenses. It signifies "intentional control and dominion." Although some of the language in Labato might seem to require actual manual possession, the prevailing rule at common law and in most jurisdictions is that actual physical possession is not a requisite of receiving. Possession may be constructive. Intentional control over the goods by the receiver is sufficient. 2 Wharton's Criminal Law (12th ed. 1932), § 1238, p. 1553; and see Sate v. Brown, 67 N.J. Super. 450, 454-455 (App. Div. 1961). We believe that the widespread rule of constructive possession, involving intention and, pro tanto, knowledge plus control, is consistent with the court's rationale in Labato.
In this case defendant was discovered on top of the identified stolen Chevrolet truck with a case of beer in his hands. Although the beer cases on the truck were not identified *58 to a certainty as those taken from the Rapp warehouse, the connecting link is found in the coincidence of the estimated number of cases stolen from that place and those found on the truck and in the cellar of the Venetian Tavern. Defendant's flight from the scene was evidence of a guilty conscience with regard to the beer. Of course, one cannot be manually in possession of a truck in the same sense that he would possess a small package. We conclude that the requisite intention and control were inferable from defendant's position on the stolen truck and the obvious attempt he was making to unload it.
It is not necessary that a jury believe that defendant had possession of all the items mentioned in the indictment in order to convict. State v. Libbey, 224 Ore. 431, 356 P.2d 161, 163 (Sup. Ct. 1960), certiorari denied 365 U.S. 882, 81 S.Ct. 1037, 6 L.Ed. 195 (1961); People v. Malouf, 135 Cal. App.2d 697, 287 P.2d 834, 838 (D. Ct. App. 1955); United States v. Crawford, 195 F.2d 472 (3 Cir. 1952). The jury could well have found, as it did, that defendant had possession of the stolen truck and beer. Cf. State v. Todaro, 131 N.J.L. 59 (Sup. Ct. 1943), affirmed 131 N.J.L. 430 (E. & A. 1944), appeal dismissed 323 U.S. 667, 65 S.Ct. 73, 89 L.Ed. 542 (1944); State v. Krupin, 100 N.J.L. 7 (Sup. Ct. 1924), affirmed 101 N.J.L. 228 (E. & A. 1925).
Defendant next claims that the evidence, if it tended to show that he was guilty of anything, established that he was guilty of larceny and not receiving. The jury obviously concluded that there was no evidence which would support its finding defendant guilty of entering and larceny, but that there was sufficient evidence to convict him for receiving. We have already adverted to what the trial judge said on the motion for a new trial  that the only direct evidence of defendant's involvement in the larceny was Pierson's confession, and this could not be used against him. He also found there was sufficient evidence of receiving.
*59 We find no merit in the argument that the jury verdict was the result of a compromise.
In sum, we will not set a jury verdict aside as against the weight of the evidence unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. R.R. 1:5-1(a). So long as the verdict rests on testimony competent to sustain the inference implied in such a finding, it is conclusive upon the reviewing court. Our review is limited to correcting injustice where there is "an inescapable conclusion of obvious error by the jury." State v. Smith, above, 32 N.J., at page 524; State v. Landeros, 20 N.J. 76, 83 (1955), certiorari denied 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956). Such is not the case here.

III.
It is urged that the trial court erred in its charge on the presumption of innocence. In his summation the assistant prosecutor said:
"Then you will hear also that the defendants are presumed innocent until proven guilty. This is as it should be in our system of law and in our type of society, because it could be that a defendant that was charged with a crime might be insane at the time; that he is not legally responsible, and therefore not guilty. That is why we put all the doubts in his favor. He is presumed to be innocent. I suggest to you that if you saw two defendants committing a crime in Macy's window at high noon and you looked at them and saw them doing it, and then you saw them in court a few months later they would still be presumed to be innocent. That is the way it should be."
Defendant claims that this left the jury with the impression that the presumption of innocence applies only where a defendant was insane at the time he committed the crime. He maintains that this impression was not corrected in the charge when the trial judge said:
"This presumption of innocence, I might add, remains with these defendants until you terminate this trial by your verdict.
*60 In the course of summation the assistant prosecutor mentioned this presumption of innocence properly, and I might say fairly. Mention was made of a crime committed in Macy's window at high noon and the presumption of innocence which obtains in such a case  and it does, and rightfully so  because this man committing the crime in Macy's window may have been out of his mind and incapable of forming an intent to commit the crime."
We find no substance in the claim of error. The criterion of reversible error is whether the accused was prejudiced in maintaining his defense on the merits. Even where there is error in a matter of law, it will not work a reversal unless it appears from the entire record of the proceedings that the accused thereby suffered manifest wrong or injury. State v. Biehl, 136 N.J.L. 82, 86 (Sup. Ct. 1947). We find no manifest prejudice or injury to defendant. Indeed, the trial court several times emphatically stated to the jury that the presumption of innocence remains with the defendant until the moment of verdict.

IV.
Defendant's next argument is that the actions and statements of the assistant prosecutor throughout the trial and in summation were so improper as to warrant a reversal. The trial took four days. It is manifest from the record that the trial was characterized by spirited exchanges between defense counsel and the assistant prosecutor, some of them attended by a degree of sharpness of temper and friction not unknown in cases where counsel, zealous on behalf of their clients, are quick to contest a disputed point. The trial judge was careful to cover this aspect of the case and to protect the accused when, at the close of his charge to the jury, he said:
"I want to make one observation. This has been a long trial. We have had counsel for the State and counsel for the defendants before you for four days. We have had a little fireworks in the courtroom. These gentlemen are advocates, ladies and gentlemen, having been trained in the law, trained to protect the rights of the client that they represent. It is their obligation under the oath which they have *61 taken as members of the Bar to do everything that they see fit before this Court to protect the interests of their respective clients. And if I seemed short with counsel this is normal procedure. This is not to be taken by you to indicate any displeasure at either of these defendants in any way, at the State of New Jersey or Mr. Diamond [the assistant prosecutor]. If you have any ill will toward any of these three gentlemen you are not to take it out on either Mr. Pierson or Mr. Bozeyowski or the State of New Jersey. You may take it out on me or any one of counsel. We will be happy about that."
We find nothing in the actions and statements of the assistant prosecutor in the course of the trial which may have prejudiced defendant. Nor do we find prejudice in what he said at the start of his summation. After referring to someing the trial judge had said out of the hearing of the jury regarding the Battle of Runnymede and Magna Carta, the assistant prosecutor said:
"* * * In this book Mein Kampf one of the statements that the author made was that if you have a weak case and you have nothing to go on then tell a big lie, and when you tell that big lie keep repeating it over and over again, and while you repeat that big lie before long people who are listening to it will begin to have doubts and there may even be those who begin to believe it. I am sure that you can look back on recent history and see what happened from 1933 until 1945. It is almost as if I were here trying to prove that this chair is a chair and counsel on the other hand is trying to prove to you that this is a table. He will point out to you that it has four legs like a table; that it is made of wood like a table; that it has a top like a table, and that you can put things on top of it just as you can on a table. Before long there may be some people who will begin to have doubts as to whether or not that still is a chair. I submit to you that that is what counsel is doing in this case. They are trying to conjure up in your minds doubts. This is a tactic that is often used by defense counsel in cases to cast dust into the eyes of the jury and to instill doubts in their minds."
Counsel for Pierson interrupted to say that this comment would give the jury a wrong impression. After observing that counsel had made his point, the court directed the assistant prosecutor to proceed.
It is to be noted that counsel for defendant made no objection. He did not object to the assistant prosecutor's remarks *62 at the close of the charge or ask for an admonitory instruction. Nor did he raise any question about the summation when he moved for a new trial. This point is first raised on appeal, probably under the plain error rule. R.R. 1:5-1(a).
The reference to Mein Kampf was uncalled for. However, the question to be resolved is whether such an impropriety, under the circumstances of the entire case, and in the light of the tension and friction exhibited by counsel throughout the four days of trial, warrants application of the plain error rule. State v. Corby, 28 N.J. 106, 108 (1958), defined plain error as "legal impropriety affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
As in State v. DeMarco, 76 N.J. Super. 318 (App. Div. 1962), only recently decided, we are convinced that the defendant's conviction was completely justified by the evidence. The court there observed that the application of the plain error rule must depend upon a consideration of the magnitude of the alleged error and of the facts of the case under scrutiny:
"We not only conclude that the conviction was so completely warranted by the proofs that no justification exists for the contention that the aforesaid impropriety `possessed a clear capacity to bring about an unjust result,' but we are impressed with the completeness and accuracy of the trial judge's charge to the jury in this connection. He clearly defined the respective functions of the court and jury, emphasizing that the jury must be guided by the law as pronounced by the court and must disregard observations referable thereto advanced by counsel. With equal clarity he emphasized that the proof of previous conviction of crime was admissible as an attack on credibility. The charge in this connection was sufficiently comprehensive so that in our opinion any possible harm flowing from the presently criticized remarks of the assistant prosecutor was overcome by the court's charge. State v. Buffa, 31 N.J. 378, 379 (1960)." (at page 324)
So here. There was not "an aggravated appeal to prejudice," as in State v. Driver, 38 N.J. 255 (1962). What the assistant *63 prosecutor said in his summation is far removed from what the prosecutor did in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, (1935). Cf. State v. Butler, 27 N.J. 560, 606-607 (1958) (prosecutor's personal belief of defendant's guilt); Aponte v. State, 30 N.J. 441, 447-8 (1959); State v. Bucanis, 26 N.J. 45 (1958), where the court said:
"We have frequently condemned any action by a prosecutor which does not comport with the ethical obligation of his office to see that justice is done. * * *
But we must not be so idealistic as to close our eyes to the realities of human nature as they are continually portrayed during our trial process. Each criminal trial is a swiftly moving dramatic contest which often evokes strong emotions in the participants. The charged atmosphere created frequently makes it arduous for the prosecuting attorney to stay within the orbit of strict propriety.
We have necessarily held, therefore, that not every suspected deviation from perfection on the part of a prosecutor will justify a reversal of a conviction. Before such a result ensues, his infraction must be clear and unmistakable and must substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." (at page 56)

V.
Finally, defendant claims that it was improper to amend the third count, even though his counsel as well as Pierson's consented thereto, and this for the reason that the amendment added an additional crime. We do not agree.
As noted at the beginning of this opinion, the second count initially gave the value of the beer stolen as $800. The third count did not mention the beer. The amendments to which counsel readily consented changed the value of the stolen beer in count 2 to $1,679, making the value of the stolen property $3,679. Count 3 was amended to include the beer, at its $1,679 value, making the total value of the stolen property allegedly received by defendant $3,679 instead of $2,000. This amendment merely added another item to the property allegedly received at the same time and place. No additional crime was charged.
*64 If we consider the question of double jeopardy, the indictment as originally returned would prevent a subsequent trial on the indictment as amended. The test normally applied in New Jersey on the application of the double jeopardy doctrine is whether the evidence necessary to secure the second conviction would be sufficient to secure the first. State v. Hoag, 21 N.J. 496, 502 (1956). While it might be urged in this case that additional identification of the beer as distinguished from the trucks would be necessary, nevertheless essentially the same evidence would convict defendant of receiving both  standing on top of a stolen truck with one of the beer cases in his hands, and fleeing the scene of the crime. Cf. State v. Louden, 21 N.J. Super. 497 (App. Div. 1952).
Counsel should not be allowed to speculate on the effect of the amendment where objection was not taken. Cf. State v. Schmieder, 5 N.J. 40 (1950), involving the admission of evidence. Defendant did not raise the present point at any time during the trial or on his motion for a new trial.
R.R. 1:5-1(b) provides that no judgment upon any indictment shall be reversed for any imperfection, omission, defect or lack of form, or for any error except such as shall have prejudiced defendant in maintaining his defense upon the merits. Defendant can show no prejudice here. His defense was that he was present at the scene of the crime merely in the capacity of an innocent bystander. That defense could not be affected by what stolen goods were actually received. There was no legal impropriety in the amendment affecting defendant's substantial rights and sufficiently grievous to justify notice by this court and to persuade us that the claimed error possessed a clear capacity to bring about an unjust result. State v. Corby, above; State v. Lucas, 30 N.J. 37, 62 (1959).
The judgment of conviction is affirmed.