109 N.J. Super. 57 (1970)
262 A.2d 232
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROGER KIMBROUGH AND JAMES WADE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1969.
Decided February 17, 1970.
*61 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Richard Newman, Deputy Public Defender, argued the cause for appellants (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. David S. Baime, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendants appeal from convictions following a jury trial on an indictment charging them with knowingly receiving a stolen automobile contrary to N.J.S.A. 2A:139-1. The indictment and trial of defendants was prior to State v. Bott, 53 N.J. 391 (1969), which held that a charge of receiving a stolen motor vehicle should be prosecuted for violation of N.J.S.A. 2A:139-3, a statute which does not include the evidentiary *62 rule (set forth in N.J.S.A. 2A:139-1) relating to the inferences of guilty knowledge to be drawn from possession of a stolen article within a year after the theft. While the indictment under N.J.S.A. 2A:139-1 was technically objectionable, it is not a ground for reversal. Ibid., at 402-43. However, since the case was prosecuted under N.J.S.A. 2A:139-1 we are considering it on that basis.
The State's evidence, in brief, was that shortly after midnight of July 11, 1967 police officers observed a stolen car heading east on South Orange Avenue in Newark. Two police cars took up pursuit. The car stopped on South 11th Street and as one of the officers left his patrol car and approached on foot it sped away. The second patrol car followed and the fleeing vehicle stopped when it struck a curb trying to negotiate a turn at South 12th Street. Officer Minovich said he saw two men run from the car. A short time later the defendants were found hiding in the cellar of a nearby house. Officer Colalillo, who had approached the car on foot at South 11th Street, identified defendants at the trial as the two men he saw in the car. He said Wade was the driver and Kimbrough was a passenger.
Defendants denied the crime charged. They testified they were passengers in the car which was driven by a man named Glenn and that they had no knowledge the car had been stolen until Glenn so advised them while the car was being pursued by the police. Kimbrough said he met Glenn at the Park Lounge bar earlier in the evening and became a passenger in the car when Glenn offered to drive him to South Orange. Wade testified he met Kimbrough and Glenn outside the Park Lounge and entered the car when Glenn agreed to drive him to the Glitter Club, another Newark bar. Both defendants said they ran away after the car struck the curb because they were afraid they would be charged with stealing it.
They testified that after their arrest they told the police that Glenn was the driver. This was denied by the police, who said Wade told them Kimbrough was driving the car.

*63 I
Defendants contend the trial court erred when it refused to instruct the jury as to the meaning of the word "possession," within contemplation of N.J.S.A. 2A:139-1, necessary to give rise to the inference of guilty knowledge provided for in the statute, particularly since it is undisputed that a driver-passenger relationship was involved. Their defense was that they were merely passengers in a stolen car driven and possessed by Glenn, while the State contended there was no third party in the car but that Wade was the driver and Kimbrough the sole passenger. They argue that under either version of the facts the court erred when it refused to definitively instruct the jury as to the meaning of possession within contemplation of the statute or to inform the jury that there is a distinction regarding what constitutes possession as between the driver of an automobile and a mere passenger.
The State concedes that the court did not expressly define the term "possession" necessary to trigger the statutory inference of guilty knowledge. However, it argues that the charge adequately apprised the jury of the applicable law, particularly since the court charged the jury that if it believed the explanation given by defendants was reasonable, they were to be acquitted.
In charging the jury the trial judge read N.J.S.A. 2A: 139-1 in its entirety. In doing so he advised the jury that proof of possession of a stolen motor vehicle within a year from the date of the theft was sufficient evidence to authorize conviction of the defendants unless they proved to the jury's satisfaction that their possession arose under one of the five examples innocent acquisition described in the statute and that "the statute does not preclude a defendant from presenting other defenses or explanations as to his or their possession of the alleged stolen property." He also told the jury that "the statute creates a permissive presumption of guilty knowledge on the part of the defendant from the mere possession of the stolen goods within the specified period."
*64 The crime of receiving stolen property under N.J.S.A. 2A:139-1 requires proof of three things to establish guilt: (1) the property was stolen, (2) the accused received it, and (3) at the time he received it, he knew it was stolen. "Receiving" envisages possession or control as an essential element. State v. Bozeyowski, 77 N.J. Super. 49, 57 (App. Div. 1962), cert. den., 374 U.S. 851, 83 S.Ct. 1916, 10 L.Ed.2d 1071 (1963). Possession signifies intentional control and dominion. Actual physical possession is not a requisite of receiving  it may be constructive. Ibid. One has possession as soon as he intentionally obtains a measure of control or dominion over the custody of the stolen property even though physical possession is in another. If proof of possession of stolen property within one year from the date of the theft is established the jury is permitted to infer that the accused had guilty knowledge that the property was stolen  the third essential element of the crime. Cf. N.J.S.A. 2A:139-1 with respect to prosecution under N.J.S.A. 2A:139-3; State v. Bott, supra, 53 N.J., at 400-401.
In State v. Serrano, 53 N.J. 356 (1969), defendant and Rafael Cesareo were charged by indictment under N.J.S.A. 2A:139-1 with unlawfully receiving a stolen car knowing it to have been stolen. Both were convicted and Serrano appealed. The court held that evidence that Serrano was a mere passenger in the stolen vehicle was not sufficient to show possession of the car or to support the inference that he had received it knowing it had been stolen, and that Serrano's motion for acquittal should have been granted. The court also commented on the inadequacy of the charge to the jury, stating:
[T]here was no discussion of what constituted possession of the car, no reference to whether under the evidence the jury could find possession in anyone other than the driver, and no instruction that they should acquit Serrano if they found his status in the car was only that of a passenger who was picked up by the driver Cesareo at the intersection described in the testimony. In effect, the court advised the jury that they could find that Serrano was in possession of the *65 stolen vehicle within the contemplation of the statute simply because he was riding in it as a passenger. [at 359]
We are satisfied that the charge in the instant case suffers from a like inadequacy and that the court erred in refusing to instruct the jury regarding the meaning of possession necessary to permit the statutory inference of guilty knowledge. The fact that the court told the jury it could acquit defendants if it believed their story was not sufficient to overcome the deficiency of the charge. Defendants were entitled to have the court enlighten the jury as to the distinction between a passenger and the driver of the car with respect to the meaning of possession necessary to permit the jury to infer guilty knowledge. Failure of the court to do so could result in the conviction of an innocent passenger. In fact, a reading of the charge indicates that the jury could assume therefrom that defendants were in possession of the car within contemplation of the statute merely because they were passengers, thereby removing from the State the burden of proving possesssion. The court's refusal to charge the jury as requested was prejudicial and requires a reversal.

II
Because this case must be retried we deem it appropriate to dispose of the other point claimed by defendants to be reversible error since it might recur on the retrial.
As stated above, both defendants testified in their own defense and said that Glenn drove the car in which they were passengers without knowledge on their part that it had been stolen. On cross-examination they said that when questioned by the police following their arrests they told the same story. They denied Wade told the police, in Kimbrough's presence, that Kimbrough was the driver, and denied that they had not told the police that Glenn was. In rebuttal, Officer Minovich, over objection, testified that defendants never said that there was a third person named *66 Glenn who had driven the car, but that Wade, in Kimbrough's presence, said Kimbrough was the driver. The trial court, in overruling the objection, held that the rebuttal testimony was admissible to affect their credibility as witnesses.
Defendants contend that the court erred in permitting the State to present rebuttal testimony of a statement previously given by Wade to the police without first determining whether he had been informed of his rights guaranteed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before making the statement. They argue here, as they did below, that a statement made without the cautionary warnings of Miranda cannot be used by the State to impeach a defendant's trial testimony.
There are cases in the federal and state courts which support defendants' position. Groshart v. United States, 392 F.2d 172, 178 (9 Cir. 1968); United States v. Fox, 403 F.2d 97, 103 (2 Cir. 1968); Commonwealth v. Padgett, 428 Pa. 229, 237 A.2d 209, 210 (Sup. Ct. 1968); People v. Marsh, 14 Mich. App. 518, 165 N.W.2d 853, 859-861 (Ct. App. 1969); Cardwell v. Commonwealth, 209 Va. 412, 164 S.E.2d 699, 702 (Sup. Ct. App. 1968); Franklin v. State, 6 Md. App. 572, 252 A.2d 487, 491 (Ct. Sp. App. 1969); State v. Brewton, 247 Or. 241, 422 P.2d 581, 583 (Sup. Ct. 1967), cert. den. 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967); State v. Galasso, 217 So.2d 326, 329 (Fla. Sup. Ct. 1968). Other jurisdictions take a contrary view. State v. Butler, 19 Ohio St.2d 55, 249 N.E.2d 818 (Sup. Ct. 1969); People v. LaBatt, 108 Ill. App.2d 18, 246 N.E.2d 845 (Ill. Ct. App. 1969); People v. Miles, 23 N.Y.2d 527, 297 N.Y.S.2d 913, 245 N.E.2d 688 (Ct. App. 1969), citing People v. Kulis, 18 N.Y.2d 318, 274 N.Y.S.2d 873, 875, 221 N.E.2d 541, 542 (Ct. App. 1966); cf. State v. Jackson, 201 Kan. 795, 443 P. 2d 279, 282 (Sup. Ct. 1968), cert. den., 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219 (1969).
*67 We conclude that the ruling laid down in Miranda does not bar the rebuttal testimony presented by the State in this case. In Miranda the court held that statements of an accused obtained by the police without prior warnings of his rights to remain silent, to counsel and appointed counsel if indigent, in violation of the accused's Fifth Amendment right against self-incrimination, were not admissible on the State's direct case.
The factual situation in Miranda was vastly different from the present case. First, the testimony of defendants' prior statements was not offered as part of the prosecution's direct case against defendants. It was admitted only after defendants had taken the stand and placed before the jury their version of the pretrial statements made to the police. By placing their version in evidence defendants also placed the truthfulness thereof in issue and the State was entitled to offer its version in rebuttal.
It is well settled that when a defendant waives his right to remain silent and takes the stand in his own defense he is thereby subjected to cross-examination as to the credibility of his story. State v. Burt, 107 N.J. Super. 390, 393 (App. Div. 1969); and see Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704 (1942). Here, the rebuttal testimony was permitted only to impeach the credibility of defendants as witnesses.
The distinction between admissibility of wrongfully obtained evidence to prove the State's case in chief and its use to impeach the credibility of a defendant who takes the stand was expressed in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), where Justice Frankfurter writing for the court stated:
It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradictions of his untruths. [at 65, 74 S.Ct., at 356]
*68 While Walder dealt with evidence inadmissible under the Fourth Amendment, we can see no logical reason why it should not apply with like force to the privileges granted an accused under the Fifth Amendment. Under the Fifth Amendment a defendant is accorded the privilege of not being compelled to testify as a witness against himself, or to have prior statements used by the prosecution to prove his guilt unless properly warned of his rights. However, that privilege does not permit a defendant to lie with impunity with respect to a prior statement he made to the police once he elects to take the stand to testify.
Moreover, we conclude that the door was opened for the State to bring out on rebuttal what was said by defendants when they were interrogated by the police. The record shows that the first reference to such conversation was brought out by Kimbrough's attorney on cross-examination of Officer Minovich on the State's case when he asked the officer if at any time on the morning of July 12 he had heard defendants state that there was a third person in the car. Thereafter, Kimbrough testified on his direct examination that he told police after his arrest that Glenn was the driver. As stated above, both defendants testified on cross-examination, without objection, that they had told the police that Glenn was the operator of the car and denied that Wade said Kimbrough was the driver.
Where defendants' version of their conversation with the police was elicited by defense counsel and repeated on cross-examination, the State may introduce its version of the conversation on rebuttal. Cf. concurring opinion of Judge Waterman on this point in United States v. Vanterpool, 394 F. 2d 697, 700 (2 Cir.1968), with which the majority of the court agreed (at 699).
We also find no merit to the argument advanced by defendants that the rebuttal testimony was inadmissible because it dealt with a collateral matter or violated the hearsay rule. We hold that the court did not err in permitting the rebuttal testimony to be received in evidence.
*69 For the reasons expressed under Point I above concerning error in the court's charge, the judgments of conviction must be reversed and the case remanded for a new trial. Prior to the retrial the indictment should be amended to recite N.J.S.A. 2A:139-3 as the statute allegedly violated instead of N.J.S.A. 2A:139-1. State v. Bott, supra, 53 N.J., at 403.
Reversed and remanded.