I would reverse the conviction and order a new trial.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ALVIN MCCOY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 25, 1987—Decided February 22, 1988.

628

Before Judges FURMAN, BRODY and SCALERA.

*Alfred A. Slocum,* Public Defender, attorney for appellant (*Thomas F. Donlon,* Designated Counsel, on the letter brief).

*Jeffrey S. Blitz,* Atlantic County Prosecutor, attorney for respondent (*John W. Grunow, Jr.,* Assistant Atlantic County Prosecutor, of counsel and on the brief).

The majority opinion of the court was delivered by

SCALERA, J.A.D.

Defendant appeals from an order denying his motion to withdraw a plea of guilty to receiving an automobile knowing that it had been stolen or believing that it probably had been stolen contrary to *N.J.S.A.* 2C:20–7. After his motion was denied, defendant was sentenced to a five-year term of imprisonment with a two and one-half year period of parole ineligibility, for this third-degree crime. On appeal, defendant raises the following two arguments: (1) that he entered the plea under duress in order to be transferred from the jail where he was being held in allegedly oppressive conditions and (2) that he failed to give an adequate factual basis for the crime.

Defendant has an extensive record of theft crimes, including three convictions for receiving stolen automobiles. The day before he committed the instant theft defendant had received probationary sentences for three other thefts, including receiving a stolen automobile. Despite his criminal record, he received these lenient sentences for cooperating with the police in

other prosecutions. That cooperation, however, made him a "security risk" in the county jail where he was being held following his arrest for the present offense. After defendant entered his plea, his attorney informed the Court that he had "been asked by the jail authorities" to request the Court to transfer defendant to a jail in a neighboring county to await sentence. The judge complied after the assistant prosecutor stated that she had "no objection."

█ At a hearing on defendant's motion to withdraw his plea, defendant testified that prior to the *retraxit* hearing he had been confined to his cell, except for an hour a day, to protect him from other inmates. He stated that this experience so unnerved him that he pled guilty in order to be transferred. He added that as a result of this pressure and the limited time he had to confer with his attorney, he "didn't really know what was going on" when he pled. However, in considering the evidence, which included a transcript of the *retraxit* hearing and the testimony of the attorney who had then represented defendant, the trial judge concluded that defendant had entered the plea voluntarily and with full knowledge of the consequences. We may not and do not disturb these findings because they are supported by sufficient credible evidence in the record. *State v. Johnson*, 42 *N.J.* 146, 162 (1964).

Regarding defendant's second argument he gave the following factual account of the crime:

> THE DEFENDANT: I was walking down the street and my friend came around the corner. [Codefendant] Keith Martin came around the corner in the car and he called me over there to him. So I came to the car. I was getting ready to enter the car. I put my hands on the car. As soon as I put my hands on the car, the cop told me to freeze, so I ran.
>
> THE COURT: Okay.... Mr. McCoy, did you have any reason to believe that the car was or might be stolen?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Did you think the car was or was likely to be stolen?
>
> THE DEFENDANT: Yes.
>
> THE COURT: He says he wasn't in the car.
>
> [THE ASSISTANT PROSECUTOR]: Were you about to get into the car, Mr. McCoy?

THE DEFENDANT: Yes, I was.

[THE DEFENDANT'S ATTORNEY] What were you about to get into the car for?

THE DEFENDANT: I was going to ride around in it.

[THE DEFENDANT'S ATTORNEY]: Knowing that the car was stolen?

THE DEFENDANT: Yes.

Defendant argues that this constituted an inadequate factual basis upon which to conclude that he actually did receive the automobile which he knew had been stolen because he did not state that he had entered it. He further argues that even if he is considered to have entered the automobile, he intended to do so only for a ride and therefore did not "receive" the automobile because he did not exercise control over the vehicle he was about to enter. Finally, he argues that he intended to enter the automobile for the sole purpose of joy riding, which is only a petty disorderly offense.

■ The fact that defendant intended to enter the automobile and had placed his hand on it for that purpose but was interrupted by the police is not fatal since it would at least constitute an attempt, *N.J.S.A.* 2C:5-1a(3), punishable to the same extent as if he had accomplished his purpose. *N.J.S.A.* 2C:5-4a.

■ We also reject defendant's argument that he admitted to no more than the petty disorderly offense of joy riding. It is a disorderly persons offense to take a "means of conveyance" without permission "with purpose to withhold [it] temporarily from the owner ..." *N.J.S.A.* 2C:20-10a. "A person commits a petty disorderly persons offense if he knowingly rides in a vehicle described in subsection a. which at the time he entered he knew or had been informed that it had been taken, or was being operated or controlled in violation of subsection a." *N.J.S.A.* 2C:20-10b. Defendant admitted that he knew the vehicle he was about to enter had been stolen and not merely temporarily withheld from the owner. Although defendant's attorney states in his brief that the distinction is so subtle as to "overwhelm the powers of the average citizen," defendant, an

experienced car thief, never complained that the distinction eluded him.

However, we do find merit in his contention that the proofs fall short of establishing that defendant had received the stolen automobile, i.e. that he was in "possession" or "control" of it at the time he was arrested and that his guilty plea was improvidently entered. *R.* 3:9–2; *State v. Sainz,* 107 *N.J.* 283, 292–293 (1987).

The Code offense of receiving stolen property, *N.J.S.A.* 2C:20–7 derives from former *N.J.S.A.* 2A:139–1 through 4. *Cannel, Title 2C,* Comment *N.J.S.* 2C:20–7. The pertinent section provides that,

> a. Receiving. A person is guilty of theft if he knowingly receives or brings into this state movable property of another knowing that it has been stolen, or believing that it has probably been stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.

The Code further defines possession in *N.J.S.A.* 2C:2–1c as follows:

> Possession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession.

It was intended that these provisions be "in accord" with the prior case law defining possession as set forth in *State v. Labato,* 7 *N.J.* 137 (1951) and *State v. DiRienzo,* 53 *N.J.* 360 (1969). II *New Jersey Penal Code,* Commentary, *Final Report of the New Jersey Criminal Law Revision Commission,* (1971) at pages 39–40.

*State v. Labato, supra,* involved the alleged possession of illegal lottery slips. In discussing the elements of that offense the Court dealt extensively with the concept of illegal possession,

> ... knowing possession, as distinguished from knowledge of the illegal character of the subject matter is equally an element of the offense....

       \*       \*       \*       \*       \*       \*       \*       \*

"Possession" is an ambiguous term derived from the Roman law. It has variant connotations; but on well-settled principle the word is to be given a strict construction in statutes defining criminal and penal offenses. It signifies an intentional control and dominion. [7 *N.J.* at 148].

Many years later, in *State v. DiRienzo, supra,* the Court dealt with the same element in the context of a charge of receiving stolen chattels. There the defendant contended that the State had failed to prove that he possessed the stolen goods, as distinguished from his knowledge that they were stolen. The Court reaffirmed the definition of *State v. Labato,* and emphasized that proof of defendant's "state of mind" was essential to a determination of possession which included "intentional control and dominion." 53 *N.J.* at 369–370.

In *State v. Serrano,* 53 *N.J.* 356 (1969), decided the same day, the Court dealt specifically with a charge of receiving a stolen motor vehicle. There defendant was a passenger in a stolen automobile which had been stopped by the police and from which defendant fled. The Court held that such evidence was insufficient to sustain defendant's conviction.

The fact that he fled from the scene ... might justify an inference that he knew or suspected the car was stolen, but since under the undisputed facts he was not in possession of it, an inference cannot be drawn that he was guilty of *receiving* it knowing it to be stolen. [*Id.* at 360].

In *State v. Kimbrough,* 109 *N.J.Super.* 57 (App.Div.1970) we had occasion to deal with a charge of receiving a stolen auto contrary to former *N.J.S.A.* 2A:139–1. Defendant likewise was a passenger in a stolen automobile which was stopped by the police after being pursued and from which he fled. That defendant asserted that he was merely a passenger in the auto and had been given a ride by one Glenn who was the driver. We noted there that the crime of "receiving" envisages possession or control as an essential element. In reversing the conviction and ordering a new trial we observed that the trial court's charge was inadequate because it failed to adequately define possession.

Defendants were entitled to have the court enlighten the jury as to the distinction between a passenger and the driver of the car with respect to the meaning of possession necessary to permit the jury to infer guilty knowledge.

Failure of the court to do so would result in the conviction of an innocent passenger. In fact, a reading of the charge indicates that the jury could assume therefrom that defendants were in possession of the car within contemplation of the statute merely because they were passengers, thereby removing from the State the burden of proving possession. [109 *N.J.Super.* at 65].

Here defendant admitted to knowing that the car was stolen but asserted only that he intended to enter it for the purpose of "riding around." We do not believe that such a role differs materially from that of the "innocent passenger" alluded to in *State v. Serrano* and *State v. Kimbrough, supra.* Obviously, one's lack of guilt may arise from his failure of possession as well as his lack of knowledge that the vehicle was stolen, as previously indicated. Evidence as to both elements is necessary. We feel strongly that the intent of the Legislature was to criminalize conduct only when it reached the level of taking possession of a stolen article (albeit actual, joint or constructive), by exercising some intentional dominion or control over it. *State v. Bozeyowski,* 77 *N.J.Super.* 49, 57 (App.Div.1962), *cert.* den. 374 *U.S.* 851, 83 *S.Ct.* 1916, 10 *L.Ed.*2d 1071 (1963). *Cf. State v. Davis,* 68 *N.J.* 69, 82 (1975). Here defendant's admission went no further than an intent to take a ride in the stolen auto. There was no other evidence at that posture which might suggest that he was in "control" of the vehicle, that he and the driver were on any joint or common mission, or that he was in any position to exert some control or dominion over the driver or the stolen automobile. Hence, the principle underpinning the guilt of a passenger in possession of a gun found in a car as illustrated in *State v. Humphreys,* 54 *N.J.* 406, 417 (1969) is simply inapposite. In fact the Court there was careful to point out that there was evidence to indicate that the gun in question was protruding from the cushions of the rear seat and it was therefore inferable that it was "within the zone of [defendant's] knowledge and control." Here no such evidence exists.

█ Thus we hold that where a defendant is merely a passenger in a car which he knows to be stolen but does not possess it because he lacks the necessary dominion and control over the

vehicle as previously discussed, he may not be convicted of receiving a stolen auto in contravention of *N.J.S.A.* 2C:20–7. *Commonwealth v. Scudder,* 490 *Pa.* 415, 416 *A.*2d 1003 (1980). While the legislature may see fit to condemn such conduct as criminal no such provision presently exists in the statute. See *State v. Labato, supra,* 7 *N.J.* at 149–150; *Cannel, Title 2C,* Comment *N.J.S.* 2C:2–1.

Reversed and remanded with directions that defendant be permitted to withdraw his plea of guilty on this charge pursuant to any plea agreement and proceed to trial.

BRODY, J.A.D., dissenting.

I dissent because in my view defendant's admission that he was about to enter an automobile for a ride knowing that it has been stolen, satisfies the essential elements of "receiving" an automobile "knowing that it has been stolen." *N.J.S.A.* 2C:20–7.

The majority reverses defendant's conviction because there was "no other evidence ... which might suggest that he was in 'control' of the vehicle, that he and the driver were on any joint or common mission, or that he was in any position to influence some control or dominion over the driver or the stolen automobile." I understand this to mean that there would have been a different result had defendant accepted an invitation from the thief to get behind the wheel and drive the automobile. It seems to me that defendant is guilty of receiving regardless of whether he happened to be a passenger or the driver, so long as he was knowingly riding in the automobile for his own purpose and was aware that it had been stolen.

*N.J.S.A.* 2C:20–7a defines "receiving" disjunctively to mean "acquiring possession, control or title, or lending on the security of the property." Thus the crime of receiving stolen movable property includes possessing, though not necessarily controlling, the property, knowing that it has been stolen.

"Possession" is not defined in Chapter 20. It is defined in *N.J.S.A.* 2C:2–1c where possession may serve as the voluntary "act" upon which guilt of any offense is predicated. Assuming that definition is applicable here, it does not support the majority's view. Again using the disjunctive, the statute deems possession a voluntary "act" if the possessor "knowingly ... received the thing possessed or was aware of his control thereof...." The possessor need only have "knowingly ... received the thing possessed." He need not have controlled it.

A passenger may knowingly ride in a vehicle for his own purpose, and therefore possess it, when he and the driver share the same purpose for riding in the vehicle. *See State v. Humphreys*, 54 *N.J.* 406, 417 (1969), where the court said

> ... even if one of [the defendant's] two co-defendants were in exclusive possession of the weapon, concealed on his person or in the automobile, [the defendant] would still share criminal responsibility for the possession of the weapon if it could be reasonably inferred that he knew of the existence of the gun and was a knowing participant in the criminal mission.

Here the shared criminal mission or purpose was to ride in the automobile for pleasure knowing that it was stolen.

*State v. Serrano*, 53 *N.J.* 356 (1969) and *State v. Kimbrough*, 109 *N.J.Super.* 57 (App.Div.1970), are distinguishable. There the trial judges erroneously equated being "only" a passenger in an automobile with being in possession of the automobile. 53 *N.J.* at 359–360; 109 *N.J.Super.* at 65. Here defendant was not only a passenger. He was a passenger who knowingly shared the driver's purpose to ride in a stolen automobile for pleasure. *See State v. Alexander*, 215 *N.J.Super.* 523, 528–530 (App.Div. 1987).

The Legislature has lessened the culpability of a passenger who knowingly rides in an automobile that has been taken from its owner temporarily. See *N.J.S.A.* 2C:20–10b. However, the Legislature chose not to lessen the culpability of a passenger who knowingly rides in a stolen automobile. The majority has

not only lessened, but completely eliminated the culpability of a passenger who knowingly rides in a stolen automobile.

I would affirm.