**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1942-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CEDRIC R. MORTON, a/k/a
GIOVANNI D. EDWARDS,
CEDRIC MORTON, CEDRIC
ROYCE MORTON, CEDRIC
ROYC MORTON, BOTS
MORTON, and BOT BOT,

    Defendant-Appellant.

_____

        Submitted March 26, 2026 – Decided June 10, 2026

        Before Judges Bishop-Thompson and Puglisi.

        On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 17-03-0095.

        Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

Renée M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Ian C. Lettire, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following his guilty plea and conviction for first-degree possession of a controlled dangerous substance (CDS) with intent to distribute, defendant Cedric R. Morton appeals from: an August 17, 2020 order denying his motion to suppress evidence; an August 8, 2024 order denying his motion to withdraw his guilty plea; and a March 4, 2025 judgment of conviction sentencing him to a seven-year prison term. We affirm all three orders.

I.

On December 21, 2016, at 1:47 a.m., Readington Township Patrolman Patrick Brown was on general patrol duty in a marked unit. He observed a white sport utility vehicle (SUV) in the parking lot of a diner, which had closed at 11:00 p.m. The vehicle, which had out-of-state license plates, was not parked in a designated parking spot. The vehicle's motor was running and the headlights were illuminated.

Patrolman Brown saw a woman standing outside the vehicle in the "unusually cold" night and decided to investigate. He pulled up behind the SUV and activated his overhead lights, whereupon the woman quickly entered the

2

vehicle. Brown exited his patrol car and began to approach the SUV, when "[h]e observed the vehicle rock forward twice and then come to a complete stop as if the driver was contemplating whether or not to leave."

While the officer's awareness was heightened because of the SUV's movement, it did not alter his approach of the vehicle. The driver rolled the window down and Patrolman Brown requested her credentials. Brown "immediately . . . detect[ed] the odor of marijuana emanating from inside the vehicle." He radioed for backup, which arrived within minutes, and asked the driver to step out of the vehicle.

Patrolman Brown spoke individually with the driver and three other adult occupants[1] of the SUV, all of whom provided inconsistent answers to questions about their travel plans. Brown questioned defendant, who was the driver's side rear passenger, about the odor of marijuana, and defendant denied smoking or possessing marijuana in the vehicle.[2] At this point, none of the occupants were

---

[1] Because of the cold temperature, two children in the SUV, a five-year-old and an infant, remained in the vehicle.

[2] The front seat passenger admitted to smoking marijuana that evening but denied having done so in the vehicle. The motion judge did not rely on this admission in her decision.

A-1942-24

placed under arrest or handcuffed. Patrolman Brown then advised the driver he was going to search the vehicle based on the odor of marijuana.

Upon searching the driver's area, Patrolman Brown found "a Red Bull container that had what appeared to be a burnt marijuana cigarette inside of it" in the center console. In the rear passenger area, he discovered a diaper bag containing "a clear baggie that had a white substance inside of it," which he "believed to be cocaine." Another officer then informed Brown defendant wished to speak to him.

Patrolman Brown explained to defendant he was under arrest and read him his Miranda[3] rights, which defendant then waived. Defendant stated "everything inside the vehicle" was his. He later confirmed "the cocaine inside the vehicle was his, [as were] the marijuana and the Red Bull."

In March 2017, a Hunterdon County grand jury returned an indictment charging defendant with first-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(1). Defendant subsequently moved to suppress the evidence discovered in the search and his statements to Patrolman Brown, claiming the motor vehicle stop was illegal and his statements were obtained in violation of his Miranda rights. After conducting a testimonial hearing, the court

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1942-24

denied the motion in an August 17, 2020 order accompanied by a written decision.

Based on the totality of the circumstances, the court found

> [Patrolman] Brown's conduct did not violate defendant's constitutional rights when he approached the vehicle in a public place. When [Patrolman] Brown arrived on the scene, the vehicle was stopped in a darkened parking lot of a closed business in the early morning hours. He observed one occupant, a female outside the vehicle on a cold night. At the time he did not know if he was dealing with someone lost, with car trouble, or something else. Under these circumstances, and upon review of the [mobile video recorder], the court finds that the presence and placement of a running vehicle in the parking lot at that hour was justified cause for concern and [Patrolman] Brown was justified in making further inquiry, whether it be classified as a community caretaking function or field inquiry.

The court explained why defendant's statements were admissible. Those given during the initial discussion about travel plans "were made outside of a custodial interrogation . . . consistent with an ordinary motor vehicle stop," and those given after the cocaine was discovered, while defendant was in custody, were made pursuant to a knowing and voluntary waiver of Miranda rights.

On August 20, 2020, defendant pleaded guilty to the charged offense. In exchange for his guilty plea, the State consented to defendant's release on his own recognizance pending sentence. Pursuant to State v. Subin, 222 N.J. Super.

227 (App. Div. 1988), the State also agreed to recommend a seven-year sentence, which is in the second-degree range, if defendant appeared at sentencing, and a sentence in the first-degree range if he failed to appear at sentencing. The plea agreement indicated defense counsel would argue for a five-year sentence.

Defendant subsequently failed to appear for his October 7, 2020 sentencing because he was hospitalized in North Carolina the previous day, and a bench warrant was issued for his non-appearance. In December 2023, while still a fugitive, defendant moved to withdraw his guilty plea. He certified: the stop of the vehicle was unjustified and the suppression motion should have been granted; he was compelled to plead guilty because of his health issues so he could be released pending sentence; and the State would not be prejudiced by granting the motion.

After considering argument, the judge denied the motion in an August 8, 2024 order accompanied by a written memorandum. The judge found defendant's "belated, bald assertion of innocence and associated motion practice and ruling do not rise to the level of a colorable claim of innocence." The record of the plea hearing reflected defendant testified, under oath, he knowingly and voluntarily entered into the plea agreement. The judge also determined the

6

agreement was favorable to defendant because it permitted defendant's release pending sentence and a downgrade in sentence. Noting defendant waited years to file the motion, during which time he was a fugitive, the judge found granting the motion would unfairly prejudice the State due to defendant's "volitional delay."

At the February 28, 2025 sentencing hearing, the judge found the following aggravating factors: three ("[t]he risk that the defendant will commit another offense"), N.J.S.A. 2C:44-1(a)(3); six ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"), N.J.S.A. 2C:44-1(a)(6); and nine ("[t]he need for deterring the defendant and others from violating the law"), N.J.S.A. 2C:44-1(a)(9). The judge also found the following mitigating factors: two ("[t]he defendant did not contemplate that the defendant's conduct would cause or threaten serious harm"), N.J.S.A. 2C:44-1(b)(2); eight ("[t]he defendant's conduct was the result of circumstances unlikely to recur"), N.J.S.A. 2C:44-1(b)(8); and nine ("[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"), N.J.S.A. 2C:44-1(b)(9).

Despite defendant's non-appearance at the initial sentencing hearing, the State recommended a seven-year term based largely on the positive strides

7

defendant had made since the offense, albeit as a fugitive. Defense counsel argued for a sentence "significantly less than the seven." After determining the mitigating factors substantially outweighed the aggravating factors, the judge imposed a seven-year sentence but granted defendant's motion for release on bail pending appeal.

Defendant presents the following points for our consideration:

POINT I.

THE TRIAL COURT ERRED IN DENYING . . . DEFENDANT'S MOTION TO SUPPRESS.

POINT II.

THE TRIAL COURT ERRED IN DENYING . . . DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA BEFORE SENTENCING.

POINT III.

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

II.

A.

We defer to a trial court's factual findings in a suppression hearing "when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374

(2017)).  The trial judge has the "'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).  We will ordinarily "not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'"  State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).  However, no deference is owed to the trial court's application of the law to the facts, which is reviewed de novo.  State v. Fenimore, 261 N.J. 364, 373 (2025).

Defendant argues the motion judge erred in finding the stop of the vehicle was a field inquiry, and Patrolman Brown lacked reasonable suspicion to conduct an investigative detention.  "A field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer."  State v. Rosario, 229 N.J. 263, 271 (2017).  Because a field inquiry is not a seizure, it need not be supported by a particular suspicion of criminal activity on the part of an officer.  Id. at 272.

The community-caretaking exception to the warrant requirement "recognizes that police officers provide 'a wide range of social services' . . .

A-1942-24

includ[ing], among other things, protecting the vulnerable from harm and preserving property." State v. Edmonds, 211 N.J. 117, 141 (2012) (quoting State v. Bogan, 200 N.J. 61, 73 (2009)).  The community caretaking doctrine "applies when the 'police are engaged in functions[ that are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a [criminal] statute.'"  State v. Diloreto, 180 N.J. 264, 275 (2004) (second alteration in original) (quoting State v. Cassidy, 179 N.J. 150, 161 n.4 (2004)).

Having reviewed the record in light of the applicable standards, we discern no basis on which to disturb the motion judge's thorough findings and sound reasoning.  Patrolman Brown, whom the judge found credible, approached the vehicle based on a number of factors:  the vehicle was stationary but running, not parked within a parking spot, in the lot of a diner that had been closed for hours; and a woman was standing outside the vehicle in the early morning hours in the extreme cold.  Thus, there was ample support for the judge's determination Patrolman Brown was involved in either a field inquiry or a community caretaking function when he approached the vehicle and asked questions in a "calm, friendly, and conversational" tone.  The fact that the officer, under these circumstances, had activated the overhead lights did not transform the encounter into an investigative detention at that point.

When the driver rolled down the window and Patrolman Brown detected the odor of marijuana, there was probable cause to believe the vehicle's occupants had engaged in criminal activity. State v. Walker, 213 N.J. 281, 290 (2013). Defendant does not dispute the officer's authority to conduct the search of the driver's area, which resulted in the discovery of the burnt marijuana cigarette. Rather, he argues the search of the rear passenger area and diaper bag, which resulted in the discovery of cocaine, exceeded the permissible scope of the search.

Defendant relies on cases in which warrantless searches were deemed unconstitutional because they impermissibly exceeded the scope of reasonableness. In State v. Cohen, 254 N.J. 308, 313 (2023), officers detected a general smell of raw marijuana, searched the passenger compartment but did not find any marijuana, and then searched the engine hood and trunk and discovered two guns and hollow-point bullets. In State v. Murray, 151 N.J. Super. 300, 303-05 (App. Div. 1977), troopers observed a roach clip and vial with trace amounts of marijuana, then removed the driver's seat, forced open an attaché case, and discovered hashish. In State v. Patino, 83 N.J. 1, 5-6 (1980) (quoting State v. Patino, 163 N.J. Super. 116, 119-20 (App. Div. 1978)), troopers observed green vegetation and a marijuana cigarette on the vehicle floor,

11

searched the passenger area but did not find any contraband, and then unlocked the trunk and discovered cocaine in a shopping bag. In each of these cases, the search of the passenger compartment was justified; however, extending the search into the trunk, engine hood, or structural integrity of the vehicle exceeded the bounds of a reasonable warrantless search. Cohen, 254 N.J. at 327; Murray, 151 N.J. at 307; Patino, 83 N.J. at 14.

Unlike these cases, Patrolman Brown's search was confined to the passenger compartment of the vehicle. Contrary to defendant's contention, the front passenger's admission to using marijuana does not limit the scope of the search to the immediate area of that occupant. The diaper bag was located in the rear passenger compartment, accessible to the vehicle's occupants, and therefore within the bounds of a reasonable search of the vehicle.

Defendant also contends his initial statements to the officer should have been suppressed because they were the product of a custodial interrogation without Miranda warnings. This contention is unsupported by the record because the initial inquiry had none of the indicia of a custodial interrogation. As the motion judge found, defendant was asked nine non-confrontational questions, the encounter lasted approximately ninety seconds, and defendant did not appear to be pressured. Two other passengers had already been briefly

12

questioned and walked away from the encounter. Thus, we are unpersuaded these statements should have been suppressed.

B.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Lipa, 219 N.J. 323, 332 (2014). "A trial judge's finding that a plea was voluntarily and knowingly entered is entitled to appellate deference so long as that determination is supported by sufficient credible evidence in the record." Ibid. (citing State v. McCoy, 222 N.J. Super. 626, 629 (App. Div. 1988)). "Thus, the trial court's denial of [a] defendant's request to withdraw [a] guilty plea will be reversed on appeal only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999).

"[T]he burden rests on [the] defendant, in the first instance, to present some plausible basis for [the] request [to withdraw the plea], and . . . good faith in asserting a defense on the merits . . . ." State v. Smullen, 118 N.J. 408, 416 (1990) (quoting State v. Huntley, 129 N.J. Super. 13, 17 (App. Div. 1974)). Trial judges must consider and balance the four factors set forth in State v. Slater, 198 N.J. 145, 157-58 (2009).

Defendant reprises the arguments he made to the motion judge: he did not commit the offense; he only pleaded guilty for health reasons to avoid jail in light of the COVID-19 pandemic; the plea was not voluntary; and the State would not be prejudiced. Having considered defendant's contentions in view of the applicable law, we discern no abuse of discretion in the denial of his motion to withdraw his guilty plea. The motion judge's findings of fact were grounded in the record, and his conclusions comport with governing law. We therefore affirm the August 8, 2024 order substantially for the reasons set forth by the judge in his comprehensive and well-reasoned written decision. See R. 2:11-3(e)(2).

C.

We review sentencing determinations under a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). "Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We defer to the sentencing court's factual findings and will not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014).

Defendant contends the judge erred in weighing the aggravating and mitigating factors and declining to find defendant was idiosyncratic, which resulted in an improper sentence. Having reviewed the record in light of our standard of review, we discern no basis on which to disturb the judge's findings and conclusions. Nothing in the record indicates defendant had significant idiosyncratic issues that would render imprisonment an excessive hardship. See State v. Jarbath, 114 N.J. 394, 408-09 (1989) (holding imprisonment of the defendant, who suffered from mental illness and cognitive disabilities, would constitute a "serious injustice" that "clearly outweigh[ed] the needs of general deterrence"). Defendant was sentenced within the bounds of a favorable plea agreement, which gives the sentence a "presumption of reasonableness" that is afforded due consideration. State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-1942-24